Joseph L. Oliva, Esq. (SBN 113889)
Matthew R. Toothacre, Esq. (SBN 330298)
**JOSEPH OLIVA & ASSOCIATES, P.C.**
11956 Bernardo Plaza Dr. #532
San Diego, CA 92128
Phone (858) 304-7400
oliva@olivafirm.com
mtoothacre@olivafirm.com

Attorneys for Plaintiff,
BAHNSON, INC.

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

BAHNSON, INC., a North Carolina corporation;

Plaintiff,

v.

CONTINENTAL CASUALTY COMPANY, an Illinois Corporation; and NATIONAL INDEMNITY COMPANY, a Nebraska Corporation,

Defendants.

Case No.:

**BAHNSON, INC.'S COMPLAINT FOR:**

1. **BREACH OF CONTRACT-FAILURE TO DEFEND AND INDEMNIFY**
2. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING-FAILURE TO DEFEND AND INDEMNIFY**
3. **DECLARATORY RELIEF**

**[DEMAND FOR JURY TRIAL]**

Plaintiff, BAHNSON, INC., a North Carolina Corporation, alleges causes of action against CONTINENTAL CASUALTY COMPANY, an Illinois Corporation, and NATIONAL INDEMNITY COMPANY, a Nebraska Corporation, as follows:

/ / /

/ / /

/ / /

/ / /

/ / /

## PARTIES

1. Plaintiff BAHNSON, INC. (“Bahnson” or “Plaintiff”) was and is at all relevant times a North Carolina corporation with its principal place of business in North Carolina. Bahnson was and is at all relevant times authorized and registered with the California Secretary of State’s office to do business in the State of California and regularly conducts business in the State of California.

2. Defendant CONTINENTAL CASUALTY COMPANY (“Continental”) is an Illinois corporation with its principal place of business in Chicago, Illinois. Upon information and belief, Continental is authorized to do business in the State of California and regularly engages in the business of insurance in the State of California.

3. Defendant NATIONAL INDEMNITY COMPANY (“NICO”) is a Nebraska corporation with its principal place of business in Omaha, Nebraska. Upon information and belief, National is authorized to do business in the State of California and regularly engages in the business of insurance in the State of California. Upon information and belief, Continental sold and transferred all liability with respect to asbestos and toxic tort cases to NICO in or around 2010 thereby NICO assumed the duties, obligations, and rights under the policy discussed herein.

4. NICO and Continental shall collectively be referred to herein as “Defendants”.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. Section 1332(a)(1) because Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Further, this Court has personal jurisdiction over Defendants because Defendants purposefully availed themselves to California because the policy was issued and

delivered to a California corporation, Envirotech, in the State of California and insuring its California operations.

6. This Court also has jurisdiction over this declaratory judgment action pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. section 2201. An actual and substantial controversy exists between the parties.

7. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## DIVISIONAL ASSIGNMENT

8. Pursuant to Civil L.R. 3-2(c) and (d), this case is properly assigned to the San Francisco Division of this Court because a substantial part of the events and omissions giving rise to the claims in this case occurred in the County of San Francisco, including but not limited to the location of the named insured under the Policy being located in this Division when the Policy was issued and the Policy being issued and delivered to the named insured in this Division.

## THE INSURANCE POLICY

9. Bahnson is the successor in interest to Envirotech and has assumed the assets and liabilities of Envirotech, including insured status under Envirotech's Policy of insurance. As such, Bahnson is conferred all of the rights, duties, and obligations set forth under the Envirotech Policy as set forth herein.

10. Continental issued, executed, and delivered one or more General Liability and excess Policy to Envirotech including without limitation the following: policy number CCP 9034300 (effective 05/29/1972 – 05/29/1975) (the "Policy"). A true and correct copy is attached hereto as **Exhibit "A."**

11. The Policy provides coverage to Envirotech as the named insured and extends coverage to all of Envirotech's subsidiaries and affiliates, including but not limited to The Bahnson Company and, currently, as based on the corporate history, Bahnson, Inc.

12. Bahnson was added by endorsement as an insured under the Policy on June 29, 1973.

13. The Policy has Combined Bodily Injury Liability ("AC") and Property Damage Liability ("BD") Limits of $300,000 per occurrence and an annualized Products/Completed-Operations aggregate limits of $500,000.

14. The Policy contains no aggregate limit for ongoing operations but only a $300,000 per occurrence limit.

15. It is undisputed there is no aggregate limit under the general liability section of the Policy and thus no limit to the number of "occurrences" to which the Policy shall apply.

16. The Policy specifically provides as follows:

> **I. COVERAGE AC—BODILY INJURY LIABILITY**
> **COVERAGE BD—PROPERTY DAMAGE LIABILITY**
>
> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> AC. **bodily injury** or
> BD. **property damage**
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any

suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

***

**II. PERSONS INSURED**

Each of the following is an insured under this insurance to the extent set forth below:

(a) The named insured;

(b) Except with respect to the ownership or use, including loading or unloading thereof, of an automobile, or the operation for the purpose of locomotion, upon a public highway of mobile equipment registered under any motor vehicle registration law

(1) If the named insured is designated as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor;

(2) If the named insured designated in the declarations as a partnership or joint venture, the

partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(3) If the named insured in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

(4) Any person (other than an employee of the named insured) or organization while acting as real estate manager for the named insured…

***

**III. LIMITS OF LIABILITY**

Regardless of the number of (1) Insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, (3) claims made or suits brought on account of bodily injury or property damage, or (4) automobiles to which this policy applies the company's liability is limited as follows:

***

**B. Combined Limits Plan**

**Coverage AC and BD Combined –** The limit of liability stated in the schedule as applicable to "each occurrence" is the total limit of the company's liability under Coverages AC and BD combined for all damages as the result of any one occurrence, provided with respect to any occurrence for which notice of this policy is given in lieu of security of when this policy is certified as proof of financial responsibility for the insured under the provisions of the motor vehicle financial responsibility law of any state or province, such limit of liability shall be applied to provide the separate limits required by such law for bodily injury liability and property damage liability to the extent of the coverage required by such law, but the separate application of such limit shall not increase the total limit of the company's liability.

Subject to the above provision respecting "each occurrence", the total liability of the company for all damages because of all bodily injury and property damage to which this coverage applies described in any of the numbered subparagraphs below shall not exceed the limit of liability stated in the schedule as "aggregate:"

(1)  All property damage except

a.    All property damage arising out of Comprehensive Automobile Liability Insurance and

b.   All property damage included in the products hazard and all property damage included in the completed operations hazard;

(2)  All bodily injury and property damage included within the completed operations hazard and all bodily injury and property damage included within the products hazard.

17.    With respect to the definition of "occurrence," the Policy specifically provides as follows:

"occurrence" means accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

**Coverages AC, BD and AC and BD Combined –** For the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

18.     Under the terms and conditions of the Policy, it is undisputed that claims for asbestos exposure during Bahnson's ongoing construction operations are covered under the general liability section of the Policy.

19.     Defendants' obligation to pay under the general liability section of the policy is subject to a "per occurrence" limit of liability, but not an "aggregate" limit of liability. The "aggregate" limit of liability in the Policy only applies to damages for bodily injury that is within either the "products hazard" or the "completed operations hazard," as defined under the Policy.

20.     The Policy specifically provides with respect to completed operations coverage as follows:

> "Completed operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. "Operations" include materials, parts or equipment furnished in connection there with. Operations shall be deemed completed at the earliest of the following times:
>
> 1) when all operations to be performed by or on behalf of the named insured under the contract have been completed.
>
> 2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or
>
> 3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or

organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, which are otherwise complete shall be deemed completed.

The completed operations hazard does not include bodily injury or property damage arising out of:

a)    operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,

b)    the existence of tools, uninstalled equipment or abandoned or unused materials, or

c)    operations for which the classification stated in the policy or in the company's manual specifies "including completed operations".

21.    The Policy specifically provides with respect to products hazard coverage as follows:

"Products hazard" includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from

premises owned or rented to the named insured and after physical possession of such products has been relinquished to others.

## STATEMENT OF FACTS

22. Bahnson has been named as a defendant in a series of lawsuits arising out of alleged exposure to asbestos and resulting damages. Each of the lawsuits allege exposure to asbestos-containing products during the effective dates of the Policy. Asbestos-related injuries are injurious, ongoing, and progressive diseases, thus all policies on risk from the initial exposure are required to defend and indemnify the insured. The Policy was on risk from the initial exposure alleged by each plaintiff in the lawsuits. Specifically, in each of the lawsuits filed against Bahnson alleging asbestos exposure, the complaints can be characterized as:

a. A release of asbestos injuring the plaintiff named in each underlying action while Bahnson was also undertaking construction operations in the immediate location of plaintiff. Such allegations and related proof trigger the ongoing operations/general liability coverage part as there is an immediate injury to the pulmonary system contemporaneous with exposure as alleged in each underlying action or as established by scientific/medical testimony;

b. Plaintiffs allege exposure to asbestos fibers from work previously undertaken by Bahnson, which constitutes the basis of the plaintiffs' claims against Bahnson; or

c. A combination of ongoing operations and exposures arising out of the completed work of Bahnson triggering both the general liability coverage and products/completed operations coverage.

23. The following lawsuits arising out of alleged exposure to asbestos and resulting damages have been settled in which Defendants issued payment, in part,

on behalf of Bahnson:

a. *Ronnie J. Jonas v. Air & Liquid Systems Corporation, et al.*, filed in the State of South Carolina, County of Richland, in the Court of Common Pleas for the Fifth Judicial Circuit, Case No. 2020-CP-40-01163 (the "Jonas Action").

b. *Joseph Franklin Rampey v. Covil Corporation, et al.*, filed in the State of South Carolina, County of Richland, in the Court of Common Pleas for the Fifth Judicial Circuit, Case No. 2020-CP-40-00585(the "Rampey Action").

c. *Richard F. Carpenter, et al. v. Armstrong Int'l, Inc., et al.*, State of South Carolina, County of Richland, in the Court of Common Pleas for the Fifth Judicial Circuit, Case No. 2020CP4004475 (the "Carpenter Action").

d. *Diane McCullough, et al. v. 4520 Corp., Inc.*, State of South Carolina, County of Richland, in the Court of Common Pleas for the Fifth Judicial Circuit, Case No. 2020CP4001952, (the "McCullough Action").

e. *Edward R. Morgan, et al. v. Armstrong Int'l, Inc., et al.*, State of South Carolina, County of Richland, in the Court of Common Pleas for the Fifth Judicial Circuit, Case No. 2020CP4005731(the "Morgan Action").

f. *Norma D. Bowlin v. Covil Corporation, et al.*, State of South Carolina, County of Richland, in the Court of Common Pleas for the Fifth Judicial Circuit, Case No. 2020CP4002692(the "Bowlin Action").

g. *Eunice H. Sims, at al. v. 3M Company, et al.*, filed in the State of South Carolina, County of Richland, in the Court of Common Pleas for the Fifth Judicial Circuit, Case No.

2020CP4005935 (the "Sims Action").

h. *Stephen C. Horton, et al. v. Armstrong International, Inc., et al.*, filed in the State of South Carolina, County of Richland, in the Court of Common Pleas for the Fifth Judicial Circuit, Case No. 2020CP4005526 (the "Horton Action").

i. *Jerry V. Campbell, et al. v. Armstrong International, Inc., et al.*, filed in the State of South Carolina, County of Richland, in the Court of Common Pleas for the Fifth Judicial Circuit, Case No. 2021CP4002286 (the "Campbell Action").

j. *Billy D. Horne, Sr., et al. v. Armstrong International, Inc., et al.*, in the State of South Carolina, County of Richland, in the Court of Common Pleas for the Fifth Judicial Circuit, Case No. 2021CP4001821 (the "Horne Action").

k. *Tommy Wannamaker, et al. v. 3M Company, et al.*, filed in the State of South Carolina, County of Richland, in the Court of Common Pleas for the Fifth Judicial Circuit, Case No. 2021CP3800240 (the "Wannamaker Action").

l. *Wilbur D. Wilson, et al. v. Armstrong International, Inc., et al.*, filed in the State of South Carolina, County of Richland, in the Court of Common Pleas for the Fifth Judicial Circuit, Case No. 2021CP4002119 (the "Wilson Action").

m. *Tommy D. Agner, Sr., et al., v. 4520 Corp., Inc., et al.*, filed in the State of South Carolina, County of Richland, in the Court of Common Pleas for the Fifth Judicial Circuit, Case No. 2021CP4005068 (the "Agner Action").

n. *Susan K. McCarty v. Armstrong International, et al.,* filed in the State of South Carolina, County of Richland, in the Court of

Common Pleas for the Fifth Judicial Circuit, Case No. 2021CP4003955(the "McCarty Action").

o.    *Jack E. Taylor v. Armstrong International, Inc., et al.*, filed in the State of South Carolina, County of Richland, in the Court of Common Pleas for the Fifth Judicial Circuit, Case No. 2020CP4006134 (the "Jack Taylor Action").

p.    *Anna Marie S. Pritchett, et al. v. 3M Company, et al.,* filed in the State of South Carolina, County of Richland, in the Court of Common Pleas for the Fifth Judicial Circuit, Case No. 2021CP4003415 (the "Pritchett Action").

q.    *Hoyle Steven Bostian, et al, v. 3M Company, et al.,* filed in the State of South Carolina, County of Richland, in the Court of Common Pleas for the Fifth Judicial Circuit, Case No. 2021CP4004877 (the "Bostian Action").

r.    *Joe Eldra Goodwin, et al. v. 4520 Corp., Inc., et al.*, filed the State of South Carolina, County of Richland, in the Court of Common Pleas for the Fifth Judicial Circuit, Case No. 2020CP4004613 (the "Goodwin Action").

s.    *Shelby Payne v. 3M Company, et al.,* filed in the State of South Carolina, County of Richland, in the Court of Common Pleas for the Fifth Judicial Circuit, Case No. 2022-CP-40-01281(the "Payne Action).

t.    *Michael H. Lamm, et al. v. 4520 Corp, et al.,* filed in the State of South Carolina, County of Richland, in the Court of Common Pleas for the Fifth Judicial Circuit, Case No. 2022-CP-40-01241(the "Lamm Action").

u.    *James Franklin Davis v. 3M Company, et al.* filed in the State of South Carolina, County of Richland, in the Court of

Common Pleas for the Fifth Judicial Circuit, Case No. 2022-CP-40-02381(the "Davis Action").

v. *James E. Love, et al. v. 3M Company, et al.,* filed in the State of South Carolina, County of Richland, in the Court of Common Pleas for the Fifth Judicial Circuit, Case No. 2021CP4006190 (the "Love Action").

w. *Melvin G. Welch v. 3M Company, et al.,* filed in the State of South Carolina, County of Richland, in the Court of Common Pleas for the Fifth Judicial Circuit, Case No. 2022-CP-40-03834 (the "Welch Action").

24. The Jonas Action, Rampey Action, Carpenter Action, McCullough Action, Morgan Action, Bowlin Action, Sims Action, Horton Action, Campbell Action, Horne Action, Wannamaker Action, Wilson Action, Agner Action, McCarty Action, Jack Taylor Action, Pritchett Action, Bostian Action, Goodwin Action, Payne Action, Lamm Action, Davis Action, Love Action, and Welch Action shall collectively be referred to herein as the "Underlying Asbestos Actions".

25. The Underlying Asbestos Actions alleged Bahnson mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing thermal insulation.

26. Bahnson, Inc. was sued as a "Product Defendant" and for the work it conducted at the various industrial sites in the southeastern United States which allegedly exposed tens of thousands of people to asbestos.

27. Defendants agreed to defend and indemnify Bahnson in connection with the Underlying Asbestos Actions subject to a reservation of rights.

28. As noted above, Bahnson settled several claims which named

Bahnson as a defendant asserting exposure to asbestos-containing products arising from the ongoing construction operations of Bahnson during the effective dates of the Policy.

29. On June 13, 2023, Resolute Management, Inc., administrator of asbestos-related claims on behalf of certain CNA-affiliated underwriting entities, including Defendants, under policies incepting prior to January 1, 2010, as agent of Defendants sent written notice to policyholder Bahnson advising Bahnson of the imminent exhaustion of the aggregate limit for damages included within the products and completed operations hazard for the Policy.

30. Further, Defendants advised Bahnson after the products and completed operations aggregate limit has been exhausted for the Policy, the Policy would only provide coverage to Bahnson for asbestos claims only to the extent they allege bodily injury which occurs during the policy period of CCP 9034300 from Bahnson operations that were ongoing and not completed during the policy period up to the per occurrence limits of policy CCP 9034300 which are $300,000 for the annual period of 5/29/73 to 5/29/74 and $300,000 for the annual period of 5/29/74 to 5/29/75.

31. Defendants' position that indemnification under the Policy for a number of the Underlying Asbestos Actions applies to the products and completed operations hazard is contrary to the evidence uncovered in several of the Underlying Asbestos Actions and communicated to Defendants through its appointed defense counsel. Specifically, without any factual or evidentiary basis, Defendants have allocated the entire settlements in the Carpenter Action, Davis Action, Love Action, Morgan Action, Shipman Action, and Jack Taylor Action (collectively, the "Disputed Actions") to the products and completed operations hazard in a self-serving manner in order to artificially exhaust the Policy, rather than the general liability coverage of the Policy for ongoing operations. The general liability coverage section has no aggregate limit, which Defendants do not

dispute and explains why Defendants improperly allocated the settlements without any factual or evidentiary basis in order to artificially exhaust the policy and relieve themselves from the duty to defend and indemnify in future lawsuits.

32.     The plaintiffs in the Disputed Actions assert that Bahnson's laborers dislodged asbestos materials while operations were ongoing, and these alleged releases caused the claimants to inhale asbestos fibers during Bahnson's operations at the various work sites. It is within a reasonable scientific and medical certainty based on published materials that the injurious process arising from the release of asbestos materials during ongoing operations immediately and contemporaneously caused bodily injury to the pulmonary system of asbestos victims. In other words, the injurious process causing injury arose at the time of inhalation while operations were ongoing.

33.     Defendants failed to investigate and provide both competent and actual evidence supporting their application to the completed operations coverage of the settlements for the Disputed Actions adequately and objectively. There is not a scintilla of evidence provided by Defendants regarding the Disputed Actions suggesting even remotely that asbestos fibers were released into the atmosphere and inhaled by the various claimants after such work by Bahnson was complete. Instead, as to each of the Disputed Actions, the evidence establishes that each Plaintiff worked at a project contemporaneous with Bahnson's ongoing operations at the same project, triggering the ongoing operations coverage of the Policy. Therefore, the exposure and the contemporaneous bodily injury occurred during the course of operations, not after the work was completed, with respect to the Disputed Actions.

34.     Defendants failed to investigate the Disputed Actions in a way to deny coverage in an arbitrary and capricious manner to artificially exhaust the policy and to absolve its duty to defend and indemnify future lawsuits.

35.     With respect to the Carpenter Action, Defendants applied the

settlement towards the products/completed operations coverage part rather than the general liability coverage part in order to artificially exhaust the Policy by asserting the following:

> "No specific ID from plaintiff, only allegations in complaint of general exposure from 1957 to 1983.  ALF says "plaintiffs have failed to identify with specificity any products, asbestos-[containing] or otherwise, for which Bahnson was responsible at any of Plaintiff's alleged worksites."  Per records Bahnson did some work prior to or potentially during plaintiff's employment at McGuire Nuclear Station, Bowater Paper Mill and Freightliner Truck Mnfg facility, although no specific dates were given.  No specific operations testimony."

However, Defendants' position is unreasonable, deceptive, and/or fraudulent given Bahnson and plaintiff in the Carpenter Action worked contemporaneously at both the McGuire Nuclear Station and Bowater Paper Plant in Catawba, South Carolina during the Policy period triggering coverage under the general liability coverage part for ongoing operations.

36.   With respect to the Davis Action, Defendants applied the settlement towards the products/completed operations coverage part rather than the general liability coverage part in order to artificially exhaust the Policy by asserting the following:

> "Plaintiff did not identify Bahnson at his deposition.  All alleged exposure ended by 1966/1968."

However, Defendants' position is unreasonable, deceptive, and/or fraudulent given Plaintiff in the Davis Action and Bahnson worked contemporaneously at multiple sites, including the JP Stevens Slater Plant in Marietta, Georgia; Habersham Mills in Habersham, Georgia; American Enka in Enka, North Carolina; Allendale Mill in Allendale, South Carolina; Graniteville Mill in Graniteville, South Carolina; and Alice Manufacturing Company in Easley, South Carolina.

Under the continuous exposure trigger of coverage, Plaintiff's exposure to asbestos contemporaneous with Bahnson's work at the same location triggers the ongoing operations coverage as the injurious process begins upon inhalation and continued through the Policy period.

37.     With respect to the Love Action, Defendants applied the settlement towards the products/completed operations coverage part rather than the general liability coverage part in order to artificially exhaust the Policy by asserting the following:

> "No direct ID of Bahnson but plaintff's testimony identified work with and around products associated with Bahnson at Celanese/Fiber Industries locations.  Plaintiff's work at these sites occurred before or after CNA policy periods; not during."

However, Defendants' position is unreasonable, deceptive, and/or fraudulent given Plaintiff in the Love Action and Bahnson worked contemporaneously at PPG Shelby during the Policy period triggering the general liability coverage part for Bahnson's ongoing operations.

38.     With respect to the Morgan Action, Defendants applied the settlement towards the products/completed operations coverage part rather than the general liability coverage part in order to artificially exhaust the Policy by asserting the following:

> "Bahnson did jobs at Rock Hill Printing & Finishing both before and during when plaintiff was on site from 1952-1962.   Bahnson completed 3 jobs at Champion Paper prior to 1967, last year plaintiff could have been there.  Bahnson did 7 jobs at PPG through 1967, last year plaintiff could've been there."

However, Defendants' position is unreasonable, deceptive, and/or fraudulent given Bahnson and Plaintiff in the Morgan Action worked contemporaneously at Rock Hill Printing & Finishing Plant in Rock Hill, South Carolina and at AME,

Inc. in Rock Hill, South Carolina. Under the continuous exposure trigger of coverage, Plaintiff's exposure to asbestos contemporaneous with Bahnson's work at the same location triggers the ongoing operations coverage as the injurious process begins upon inhalation and continued through the Policy period.

39. With respect to the Shipman Action, Defendants applied the settlement towards the products/completed operations coverage part rather than the general liability coverage part in order to artificially exhaust the Policy by asserting the following:

> "Plaintiff 's work at American Enka ended before CNA policy period. Bahnson supplied products to Carolina Eastman in1966 and 1976 but did not install."

However, Defendants' position is unreasonable, deceptive, and/or fraudulent given Plaintiff in the Shipman Action and Bahnson were working contemporaneously at the American Enka plant in Enka, North Carolina during the Policy period triggering the general liability coverage part.

40. With respect to the Jack Taylor Action, Defendants applied the settlement towards the products/completed operations coverage part rather than the general liability coverage part in order to artificially exhaust the Policy by asserting the following:

> "Bahnson completed work at Bowater Paper in 1972, two years prior to plaintiff's employment".

However, Defendants' position is unreasonable, deceptive, and/or fraudulent given the decedent in the Jack Taylor Action and Bahnson worked contemporaneously at the Bowater Paper & Pulp Mill in Catawba, South Carolina during the Policy period triggering the general liability coverage part.

41. In essence, Defendants, to protect their own legal and financial interests at the expense of the insured, have concluded without any factual support that the exposures in the Disputed Actions either arose from a product

manufactured or distributed in the chain of commerce by Bahnson or that an exposure occurred after the work by Bahnson was completed. To the contrary, the evidence is undeniable that the exposures to asbestos materials occurred during operations which were inhaled simultaneously causing immediate injury to the plaintiffs although such injury might not have been discovered until years or decades later.

42. Moreover, Defendants have unreasonably, deceptively, and/or fraudulently determined in an arbitrary and capricious manner that each job site at issue in the Underlying Asbestos Actions for which Bahnson performed work constitutes a single "occurrence" as defined under the Policy. Specifically, Defendants assert the settled asbestos claims, including the Campbell Action, Horne Action, Horton Action, and Bostian Action involve the same general conditions at the Duke McGuire and Duke Oconee sites where Bahnson performed work. Defendants assert and Bahnson disputes that these Actions stemming from these two project sites have exceeded the per site occurrence limits and are exhausted by payments made by Defendants. Defendants have also reserved the right to deny any obligation to defend or indemnify Bahnson for future asbestos claims involving alleged bodily injury from ongoing operations at either the Duke McGuire or Duke Oconee sites under the Policy.

43. A single project site does not constitute an "occurrence" as defined under the Policy because the work performed by Bahnson at a particular job site involves multiple construction contracts, spans several years, multiple trades, and involves multiple locations. Exposure to asbestos by individual plaintiffs at the same site for which Bahnson was performing ongoing construction operations constitutes multiple "occurrences". As such, Defendants have erroneously and unreasonably concluded that bodily injury sustained by plaintiffs in the Underlying Asbestos Actions arising from exposure to asbestos at any particular job site is deemed to be one "occurrence".

44.   On or about June 13, 2023, Defendants sent correspondence to Bahnson entitled "NOTICE OF EXHAUSTION." The correspondence advised Bahnson "of the imminent exhaustion of the aggregate limit for damages included within the products and completed operations hazard for [the Policy]." Additionally, Defendants asserted the per occurrence limits for the Duke McGuire and Duke Oconee plants were exhausted and Defendants "reserve[d] the right to deny any obligation to defend or indemnify Bahnson for future claims involving alleged bodily injury from ongoing operations at either Duke McGuire or Duke Oconee sites during the policy period" of the Policy. Defendants further stated: "To the extent other Bahnson locations are at issue in any future claims, CNA will continue to provide a defense subject to the remaining limits available for those other locations."

45.   On or about June 15, 2023, Bahnson sent correspondence to Defendants identifying that Defendants applied the products and completed operations hazard in a self-serving manner in order to artificially exhaust the Policy. Bahnson requested that Defendants provide the evidence, including documentation, witness testimony, or other information, relied upon Defendants supporting its conclusion that the indemnification paid under the Policy falls within the products and completed operations hazard and not the general liability section of the Policy for ongoing operations.

46.   On or about July 26, 2023, Defendants sent correspondence to Bahnson maintaining its position regarding imminent exhaustion of the products and completed operations aggregate limit for the Policy. Defendants responded that the only case materials it reviewed in determining exhaustion of the products/completed operations aggregate were the Asbestos Litigation Forms ("ALFs") prepared by defense counsel in the Underlying Asbestos Actions. Defendants asserted the Duke Oconee and PPG Shelby site occurrence limits exhausted.

47.   On or about August 30, 2023, Bahnson sent correspondence to Defendants identifying with respect to the Disputed Actions that indemnification falls within the general liability section of the Policy for ongoing operations and provided to Defendants evidence supporting such application. Additionally, Bahnson identified that the bodily injury sustained by plaintiffs in the Underlying Asbestos Actions at a particular job site did not constitute a single occurrence given the time frames, different work and contracts being performed at a specific job site, and the expansiveness of the job sites.

48.   On or about September 8, 2023, Defendants sent correspondence to Bahnson maintaining its position as to the application of the products/completed operations hazard and its position that the per-occurrence limit applies on a jobsite or location basis.

49.   On or about September 11, 2023, Bahnson sent additional correspondence to Defendants identifying the evidence supporting application of the ongoing operations coverage, identifying that under California law a single project site does not constitute a single occurrence, and demanding that Defendants provide actual evidence to support its conclusions.

50.   On or about October 6, 2023, after not receiving a response from Defendants, Bahnson sent additional correspondence to Defendants again identifying application of the ongoing operations coverage and noting the inapplicability of case law relied upon by Defendants in the Fourth Circuit Court of Appeals.

51.   On or about October 16, 2023, Defendants sent additional correspondence to Bahnson again asserting application of the products/completed operations coverage to the Disputed Actions but again without providing any evidence supporting application of the products/completed operations coverage. Further, Defendants maintained its position that the per-occurrence limit on a jobsite or location basis while now asserting that it could apply a single occurrence

for all asbestos-related bodily injury claims against Bahnson without any factual or legal support.

52. On or about November 3, 2023, Bahnson again provided the evidence to Defendants supporting application of the ongoing operations coverage to the Disputed Actions and provided legal and factual support disputing Defendants' application of a single occurrence to each job site or location.

53. On or about November 10, 2023, Defendants responded that it maintained its position regarding policy exhaustion and the application of the Disputed Actions to the products/completed operations hazard.

54. Based on the allegations set forth in each of the Underlying Asbestos Actions, coupled with the extrinsic evidence provided to Defendants, Defendants were required to defend and indemnify Bahnson in each of the Underlying Asbestos Actions under the terms of the Policy fully and completely.

55. No exclusions applicable to the Policy preclude Defendants' duty to defend or indemnify Bahnson in the Underlying Asbestos Actions under the Policy.

56. On information and belief, as a result of the Underlying Asbestos Actions and Defendants' subsequent conduct, Bahnson has been or will be compelled to incur loss and adjustment, defense, settlement, mitigation, repair, and investigative costs as well as attorneys' fees, expert fees, and other expenses. Defendants' failure and/or refusal to provide coverage fully and completely to Bahnson has caused Bahnson to erode available coverage substantially artificially on the Policy and other existing insurance Policy.

**FIRST CAUSE OF ACTION**

**(Breach of Contract as to All Defendants)**

57. Plaintiff repeats, re-alleges and incorporates by this reference each and all of the allegations contained in this Complaint.

58. As set forth above, Defendants, pursuant to the applicable insurance

Policy's terms and conditions, agreed to investigate, adjust, immediately defend, and settle claims asserted against Bahnson falling within or potentially falling within the coverage of, or as defined in, the insurance Policy identified herein. Pursuant to the insurance Policy, Defendants also had a duty to conduct a reasonable, adequate, and diligent investigation of any claims made against Bahnson and affecting Defendants' duty to defend and indemnify.

59.     The insurance Policy identified herein issued by Defendants did in fact, at a minimum, potentially cover one or more of the allegations raised in the Underlying Asbestos Actions and required Defendants to fully defend and indemnify Bahnson in the Underlying Asbestos Actions.

60.     Bahnson performed all conditions, covenants, and promises required to be performed in accordance with the terms and conditions of the written contracts of insurance, except to the extent, if any, that Bahnson was prevented from performing by Defendants, or excused from such performance, or said conditions, covenants, and promises have been waived.

61.     Bahnson duly tendered the claims made against them in the Underlying Asbestos Actions to Defendants. Thereafter, Defendants failed and refused to pay for Bahnson's defense costs, attorneys' fees, and reasonable and necessary costs fully and completely without the potential of reimbursement in furtherance of the defense of the Disputed Actions by applying the completed operations coverage despite Bahnson's ongoing operations and with respect to the Underlying Asbestos Actions by determining each site constitutes a single "occurrence" in order to artificially exhaust the Policy.

62.     Bahnson was entitled to both a defense and indemnity from Defendants without the potential of reimbursement to the insurance company and indemnity without reservation of right with respect to the duties owed to Bahnson under the Policy identified herein.

63.     To date, in breach of the express terms of the insurance contract,

Defendants have applied the completed operations coverage to the Disputed Actions despite the ongoing operations of Bahnson and with respect to the Underlying Asbestos Actions determined each site constitutes a single "occurrence" causing the Policy and the other Policy on risk to unnecessarily erode.

64. By reason of Defendants' refusal to defend without the potential of reimbursement and/or fully indemnify Bahnson without reservation of right for the Underlying Asbestos Actions, pursuant to the express obligation to do so in the Policy, Defendants breached the written contract of insurance under which Bahnson was entitled to coverage as an insured.

65. As a direct and proximate result of Defendants' breaches of its contractual duties, Bahnson may in the future incur substantial attorneys' fees and costs, experts' fees and costs and other expenses in defense and investigation in an amount within the jurisdictional limits of this Court, according to proof depending upon the date of exhaustion of the other Policy on risk.

66. As a direct and proximate result of Defendants' breaches of their contractual duties and in mitigation of Bahnson's own damages, Bahnson has incurred attorneys' fees and costs, experts' fees and costs and other costs and expenses in bringing this action, in an amount according to proof. Bahnson has been damaged in an amount presently unknown, but in excess of the jurisdictional minimum of this Court, to be established at the time of trial, according to proof.

## SECOND CAUSE OF ACTION

**(Breach of the Implied Covenant of Good Faith and Fair Dealing as to All Defendants)**

67. Plaintiff repeats, re-alleges and incorporates by reference all of the previous allegations contained in this Complaint as though fully set forth herein.

68. Defendants, at all material times, had the duty to act fairly and in good faith to its insured Bahnson in carrying out its responsibilities under the Policy of

insurance.

69. Pursuant to the Policy, Defendants have implicit obligations to act fairly and in good faith to its insured Bahnson, to investigate claims promptly and reasonably, and to make reasonable coverage decisions. The Policy identified herein is subject to an implied covenant of good faith and fair dealing such that no party will disturb the rights of the other to obtain the full benefits of the contract. Defendants have breached the implied covenant of good faith and fair dealing when refusing to provide necessary coverage(s) owed under the Policy when tendered.

70. Bahnson is informed and believes, and on such basis alleges that Defendants breached their obligations to act fairly and in good faith towards their insured Bahnson by committing, among other things, the following acts, and omissions:

a. Unreasonably refusing to indemnify Bahnson for the Underlying Asbestos Actions fully and completely without reservation and within policy limits;

b. Unreasonably refusing to conduct a reasonable investigation as to the causes of alleged damages and dates of exposure of the plaintiffs in the Underlying Asbestos Actions;

c. Unreasonably failing to give a reasonable interpretation to the provisions of the Policy, failing to reasonably apply provisions of the Policy to the Underlying Asbestos Actions, and unreasonably refusing to acknowledge that the Disputed Actions are covered under the general liability coverage part of the policy, and failing to timely, promptly and without delay, pay for the amount incurred by the insured Bahnson in settling the Disputed Actions;

d. Unreasonably and wrongfully interpreting the provisions of the subject insurance Policy, including but not limited to the application of the

completed operations coverage part and the definition of "occurrence", and the factual circumstances so as to resolve ambiguities and uncertainties against Bahnson and to favor Defendants' own economic interests;

e. Embarking on a course of conduct and pattern and practice, whereby Defendants would fail and/or refuse to respond to requests to defend or indemnify;

f. Unreasonably and wrongfully refusing to acknowledge, review, and provide a response to additional documentation and evidence provided by Bahnson regarding the Disputed Actions;

g. Failing to provide Bahnson with any reasonable or justifiable basis for the decision to apply the Disputed Actions to the completed operations coverage part; and

h. Pursuing such a course of conduct and pattern and practice in violation of the terms of the Policy and California law with the knowledge, understanding, consent and approval of Defendants' respective managing officers, directors, agents, and employees.

71. The foregoing acts and omissions were unreasonable and despicable.

72. The officers, directors and/or managing agents and/or employees of Defendants participated in, authorized and/or ratified the wrongful conduct as alleged above.

73. Defendants acted with a clear and conscious disregard for Bahnson's rights and interests under the Policy. Defendants' willful conduct as hereinabove alleged was engaged in solely to satisfy its profit motives and corporate financial income objectives, to the detriment of its insured Bahnson.

74. As a direct and proximate result of Bahnson's breaches of the implied covenant of good faith and fair dealing and refusal to provide coverage for the Underlying Asbestos Actions, Bahnson was forced to bring this action.

75. Bahnson is entitled to recover as damages against Defendants'

conduct, which, as described above, has been and continues to be unreasonable, capricious, and arbitrary, and constitutes breach of the implied covenant of good faith and fair dealing contained in the Policy. The above-described conduct further stems from improper motives, including Defendants' desire to reduce or avoid its obligations to its insured.

**THIRD CAUSE OF ACTION**

**(Declaratory Relief as to All Defendants)**

76. Plaintiff repeats, re-alleges and incorporates by reference all of the previous allegations contained in this Complaint as though fully set forth herein.

77. An actual and justiciable controversy exists between Bahnson and Defendants concerning the coverages provided under the Policy with respect to the allocation of losses/settlements by Defendants in connection with the Disputed Actions alleging exposure to asbestos causing damage during Bahnson's ongoing construction operations. A declaratory judgment is necessary and appropriate to determine the rights and duties of the parties under the insurance Policy.

78. It is undisputed there is no aggregate limit under the general liability section of the Policy and thus no limit to the number of "occurrences" to which the Policy shall apply.

79. Bahnson asserts the Disputed Actions filed against Bahnson relating to asbestos exposure arise from and relate to exposure occurring during the course of construction operation of Bahnson, i.e., inhalation of asbestos materials released during the active operations of Bahnson. The exposure and contemporaneous bodily injury to the injured Plaintiffs occurred during the course of operations, not after the work of Bahnson was completed as defined in the Policy.

80. Bahnson asserts the Disputed Actions allege exposure to asbestos during Bahnson's ongoing operations falling within the general liability coverage of the Policy, and thus are not subject to the "aggregate" limits contained in the completed operations coverage under the Policy.

81. Defendants assert and Bahnson disputes the settlement payments made to resolve the Underlying Asbestos Actions are covered under the products hazard/completed operations hazard portions of the Policy and thus are subject to the aggregate limits of liability.

82. Bahnson asserts and Defendants dispute that the settlement payments made to resolve the Disputed Actions for claims of asbestos bodily injury arising from Bahnson's ongoing operations are covered under the general liability section of the Policy and thus are subject only to the "per occurrence" limits.

83. Further, an actual and justiciable controversy exists between Bahnson and Defendants concerning what constitutes an "occurrence" as defined under the Policy with respect to the claims and allegations against Bahnson in the Underlying Asbestos Actions. A declaratory judgment is necessary and appropriate to determine the rights and duties of the parties under the insurance Policy.

84. The Policy specifically provides as follows:

> "occurrence" means accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

> **Coverages AC, BD and AC and BD Combined** – For the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

85. Defendants assert and Bahnson disputes that that the ongoing operations claims covered by the Policy are subject to a $300,000 per occurrence

limit per policy year for each site or $600,000 total for the two years of coverage from May 29, 1973 through May 29, 1975.

86. Defendants assert and Bahnson disputes each job site for which Bahnson performed work constitutes a single "occurrence" as defined under the Policy.

87. Defendants assert and Bahnson disputes the settled asbestos claims, including the Campbell Action, Horne Action, Horton Action, and Bostian Action involve the same general conditions at the Duke McGuire and Duke Oconee sites where Bahnson performed work. Defendants assert and Bahnson disputes that these actions stemming from these two project sites have exceeded the per site occurrence limits and are exhausted by payments made by Defendants.

88. Defendants have reserved the right to deny any obligation to defend or indemnify Bahnson for future asbestos claims involving alleged bodily injury from ongoing operations at either the Duke McGuire or Duke Oconee sites under the Policy.

89. Bahnson disputes the assertion by Defendants that the Policy is subject to $300,000 per occurrence limit per policy year for each site or $600,000 total for the two years of coverage.

90. Bahnson asserts Defendants have erroneously and unreasonably concluded that bodily injury sustained by plaintiffs in the Underlying Asbestos Actions arising from exposure to asbestos at any particular job site is deemed to be one "occurrence".

91. Bahnson contends and Defendants dispute that an "occurrence" shall not constitute a project site as defined under the Policy. Work performed by Bahnson at a particular job site involves multiple construction contracts, spans several years, and involves multiple locations. Exposure to asbestos by individual plaintiffs at the same site for which Bahnson was performing ongoing construction operations constitutes multiple "occurrences".

92.    Bahnson contends and Defendants dispute the settlements of the Disputed Actions must be reallocated to determine what portion of the settlements of the Disputed Actions must be placed in the proper coverages and for an accounting setting forth the proper allocation remaining under each coverage.

## DAMAGES

93.    Plaintiff repeats, re-alleges and incorporates by reference all of the previous allegations contained in this Complaint as though fully set forth herein.

94.    As a result of Defendants' failure to reasonable and properly allocate the loss/settlement payments made by Defendants on behalf of Bahnson in connection with the Underlying Asbestos Actions, Bahnson shall suffer actual damages in the form of attorneys' fees, litigation costs, and investigative costs in pursuing coverage unreasonably withheld in this instant action; attorneys' fees, costs, and expert fees and costs that have been incurred or shall be incurred in defense of the Underlying Asbestos Actions including active and future asbestos lawsuits as a result of improper exhaustion of limits.   Bahnson has suffered damages not less than the minimal jurisdictional limit of this Court.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

## ON THE FIRST CAUSE OF ACTION

1.  For compensatory damages according to proof, but in an amount within the jurisdiction of this Court;

2.  For attorney's fees and costs, according to proof;

## ON THE SECOND CAUSE OF ACTION

3.    For compensatory damages according to proof, but in an amount within the jurisdiction of this Court;

4. For attorney's fees and costs of suit in obtaining the benefits owed under the Policy, pursuant to *Brandt v. Superior Court*, 37 Cal.3d 813 (1985), according to proof;

5. For punitive and exemplary damages according to proof;

**ON THE THIRD CAUSE OF ACTION**

6. For a declaratory judgment that Defendants must fully indemnify Plaintiff up to policy limits for any settlement, award, or judgment in the Underlying Asbestos Actions;

7. For a declaratory judgment that the Disputed Actions allege exposure to asbestos during Bahnson's ongoing operations falling within the general liability coverage of the Policy, and thus are not subject to the "aggregate" limits contained in the completed operations coverage under the Policy;

8. For a declaratory judgment that the settlement payments made to resolve the Disputed Actions for claims of asbestos bodily injury arising from Bahnson's ongoing operations are covered under the general liability section of the Policy and thus are subject only to the "per occurrence" limits;

9. For a declaratory judgment that the Policy is not subject to $300,000 per occurrence limit per policy year for each site or $600,000 total for the two years of coverage;

10. For a declaratory judgment that bodily injury sustained by plaintiffs in the Underlying Asbestos Actions arising from exposure to asbestos at any particular job site is not deemed to be one "occurrence";

11. For a declaratory judgment that an "occurrence" shall not constitute a project site as defined under the Policy;

12. For a declaratory judgment that the settlements of the Disputed Actions must be reallocated to determine what portion of the settlements of the Disputed Actions must be placed in the proper coverages and for an accounting setting forth the proper allocation remaining under each coverage.

**ON ALL CAUSES OF ACTION**

13. For costs of suit herein; and

14. For all such other and further relief as the Court may deem just and proper.

Dated: November 17, 2023

**JOSEPH OLIVA & ASSOCIATES, P.C.**

By: *_/s/ Joseph L. Oliva_*

Joseph L. Oliva, Esq.
Matthew R. Toothacre, Esq.
Attorneys for Plaintiff,
Bahnson, Inc.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rule of Civil Procedure.

Dated: November 17, 2023

**JOSEPH OLIVA & ASSOCIATES, P.C.**

By: *_/s/ Joseph L. Oliva_*
Joseph L. Oliva, Esq.
Matthew R. Toothacre, Esq.
Attorneys for Plaintiff,
Bahnson, Inc.

EXHIBIT "A"

COMMERCIAL CASUALTY POLICY

DECLARATIONS

CNA/insurance

INSURANCE PROVIDED BY THE COMPANY DESIGNATED BELOW (A stock insurance company, herein called the company) Continental Center / 310 S. Michigan Ave. / Chicago, Ill. 60604

| Item | PRODUCER NO. | BRANCH | PREFIX | POLICY NUMBER |
|---|---|---|---|---|
| 1. | 057901 | 250 | CCP | 903-43-00 |

NAMED INSURED & ADDRESS: (Number & Street, Town, County & State)

ENVIROTECH CORPORATION
3000 SANDHILL ROAD
MENLO PARK, CALIFORNIA

BUSINESS OF INSURED: POLLUTION CONTROL

☐ INDIVIDUAL ☐ PARTNERSHIP ☒ CORPORATION
☐ JOINT VENTURE ☐ OTHER

☒ CONTINENTAL CASUALTY COMPANY
☐ NATIONAL FIRE INSURANCE COMPANY of Hartford
☐ AMERICAN CASUALTY COMPANY of Reading, Pa.
☐ TRANSPORTATION INSURANCE COMPANY
☐ TRANSCONTINENTAL INSURANCE COMPANY
☐ VALLEY FORGE INSURANCE COMPANY
☐ CNA CASUALTY OF CALIFORNIA

2. Policy Period: 5-29-72 To: 5-29-75 — 12:01 A.M., STANDARD TIME AT THE ADDRESS OF THE INSURED AS STATED HEREIN.

3. Audit Period: Annual, unless otherwise stated.

4. The insurance afforded is only with respect to the following Coverage Part(s) indicated by specific premium charge(s).

| ADVANCE PREMIUMS | COVERAGE PART(S) | ADVANCE PREMIUMS | COVERAGE PART(S) |
|---|---|---|---|
| $ | Comprehensive General Liability Insurance | $ | Completed Operations and Products Liability Insurance |
| $ | Comprehensive Automobile Liability Insurance | $ | Comprehensive Personal Insurance |
| $ | Automobile Medical Payments Insurance | $ | Farmer's Comprehensive Personal Insurance |
| $ | Protection Against Uninsured Motorists Insurance | $ | Garage Insurance |
| $ | Automobile Physical Damage Insurance | $ | Owners' and Contractors' Protective Liability Insurance |
| $ | Contractual Liability Insurance | $ | Premises Medical Payments Insurance |
| $ | Manufacturers' and Contractors' Liability Insurance | $ | Protection Against Uninsured Motorists Insurance |
| $ | Owners', Landlords' and Tenants' Liability Insurance | $ | Schedule Automobile Liability Insurance |
| $ INCL. | Personal Injury Liability Insurance | $ | Automobile Medical Payments Insurance |
| S 40,000. NS $ 50,000. | SPECIAL COMPREHENSIVE LIAB. | $ | Protection Against Uninsured Motorists Insurance |
| $ | | $ | |
| $ | Form numbers of endorsements attached at issuance include: G31821A, G32077A, G33445E, G36037A, G35904B, G31658B, G31649A — | | |
| $ 90,000. | Total Advance Premium for this policy. | | |

5. If Policy Period more than one year:

$ Gross Premium $ Discount $ Net Premium

Premium is payable:

$ PER END'T I-1 On effective date of Policy $ T.B.D. 1st Anniversary $ T.B.D. 2nd Anniversary

6. This declarations page is issued in conjunction with and forms a part of an insurance policy which is completed with the addition of the coverage part(s) indicated above by an advance premium and if any, by additional declarations, schedule(s), and endorsement(s). Such Coverage Part(s), and if any, additional declarations, schedule(s) and endorsement(s) disclose all hazards insured hereunder known to exist at the effective date of this policy, unless otherwise stated herein.*

7. During the past three years no insurer has canceled insurance, issued to the named insured, similar to that afforded hereunder, unless otherwise stated herein:*

*ABSENCE OF AN ENTRY MEANS "NO EXCEPTION".

Countersigned by [signature] Authorized Agent

RENEWAL OF CCP 135697

COMPRE P/L-P/D

COMMERCIAL CASUALTY POLICY

DECLARATIONS

CNA insurance

INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED BELOW (A stock insurance company, herein called the company) Continental Center / 310 S. Michigan Ave. / Chicago, Ill. 60604

C-92599

| Item | PRODUCER NO. | BRANCH | PREFIX | POLICY NUMBER |
|---|---|---|---|---|
| 1. | 057901 | 250 | CCP | S03-43-00 |

- [x] CONTINENTAL CASUALTY COMPANY
- [ ] NATIONAL FIRE INSURANCE COMPANY of Hartford
- [ ] AMERICAN CASUALTY COMPANY of Reading, Pa.
- [ ] TRANSPORTATION INSURANCE COMPANY
- [ ] TRANSCONTINENTAL INSURANCE COMPANY
- [ ] VALLEY FORGE INSURANCE COMPANY
- [ ] CNA CASUALTY OF CALIFORNIA

NAMED INSURED & ADDRESS: (Number & Street, Town, County & State)

ENVIROTECH CORPORATION
3000 SANDHILL ROAD
MENLO PARK, CALIFORNIA

BUSINESS OF INSURED: POLLUTION CONTROL

- [ ] INDIVIDUAL
- [ ] PARTNERSHIP
- [x] CORPORATION
- [ ] JOINT VENTURE
- [ ] OTHER

2. Policy Period: 5-29-72 To: 5-29-75 12:01 A.M., STANDARD TIME AT THE ADDRESS OF THE INSURED AS STATED HEREIN.

| | | |
|---|---|---|
| GL | 100 | 100 |
| AL | 100 | 100 |
| | 100 | 100 |
| COLL. | | |

THIS DECLARATIONS PAGE IS ISSUED IN CONJUNCTION WITH AND FORMS A PART OF THE COMMERCIAL CASUALTY POLICY

3. Audit Period: Annual, unless otherwise stated.

4. The insurance afforded is only with respect to the following Coverage Part(s) indicated by specific premium charge(s).

| ADVANCE PREMIUMS | COVERAGE PART(S) | ADVANCE PREMIUMS | COVERAGE PART(S) |
|---|---|---|---|
| $ | Comprehensive General Liability Insurance | $ | Completed Operations and Products Liability Insurance |
| $ | Comprehensive Automobile Liability Insurance | $ | Comprehensive Personal Insurance |
| $ | Automobile Medical Payments Insurance | $ | Farmer's Comprehensive Personal Insurance |
| $ | Protection Against Uninsured Motorists Insurance | $ | Garage Insurance |
| $ | Automobile Physical Damage Insurance | $ | Owners' and Contractors' Protective Liability Insurance |
| $ | Contractual Liability Insurance | $ | Premises Medical Payments Insurance |
| $ | Manufacturers' and Contractors' Liability Insurance | $ | Protection Against Uninsured Motorists Insurance |
| $ | Owners', Landlords' and Tenants' Liability Insurance | $ | Schedule Automobile Liability Insurance |
| $ INCL. | Personal Injury Liability Insurance | $ | Automobile Medical Payments Insurance |
| S 40,000. S $ 50,000. | SPECIAL COMPREHENSIVE LIAB. | $ | Protection Against Uninsured Motorists Insurance |
| $ | | $ | |
| $ | Form numbers of endorsements attached at issuance include: G31821A, G32077A, G33445E, G36037A, G35904B, G31658B, G31649A | | |
| $ 90,000 | Total Advance Premium for this policy. | | |

5. If Policy Period more than one year:
$ Gross Premium $ Discount $ Net Premium
Premium is payable:
PER END'T I-1 On effective date of Policy $ T.B.D. 1st Anniversary $ T.B.D. 2nd Anniversary

6. This declarations page is issued in conjunction with and forms a part of an insurance policy which is completed with the addition of the coverage part(s) indicated above by an advance premium and if any, by additional declarations, schedule(s), and endorsement(s). Such Coverage Part(s), and if any additional declarations, schedule(s) and endorsement(s) disclose all hazards insured hereunder known to exist at the effective date of this policy, unless otherwise stated herein.*

7. During the past three years no insurer has canceled insurance, issued to the named insured, similar to that afforded hereunder, unless otherwise stated herein:*

*ABSENCE OF AN ENTRY MEANS "NO EXCEPTION".

NOTE-TRANSFER LETTER — ALL RENEWAL

Countersigned by ______ Authorized Agent

31995-A PRODUCER COPY

COVERAGE PARTS

SPECIAL COMPREHENSIVE LIABILITY INSU

CLG

For attachment to Policy No. CCP 9034300

1

SCHEDULE

The insurance afforded is only with respect to such of the following Coverages as are indicated by a specific limit or limits of liability. The limit of the company's liability against each such Coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| | Coverages | LIMITS OF LIABILITY | | |
|---|---|---|---|---|
| | | EACH PERSON | EACH OCCURRENCE | AGGREGATE |
| | | | DIVIDED LIMITS PLAN | |
| Comprehensive General and Automobile Liability Insurance | AC—Bodily Injury Liability | $ | $ | $ |
| | BD—Property Damage Liability | | $ | $ |
| | | | COMBINED LIMITS PLAN | |
| | AC—Bodily Injury Liability and BD—Property Damage Liability Combined | | $ 300,000. | $ 500,000. |
| | | EACH PERSON | EACH ACCIDENT | |
| Automobile Medical Payments Insurance | F—Medical Payments | $ 5,000. | | |
| Protection Against Uninsured Motorists | U—Uninsured Motorists | $ 15,000. | $ 30,000. | |

**AUTOMOBILE MEDICAL PAYMENTS INSURANCE**

DESIGNATION OF AUTOMOBILES—Division 1

(1) ☐ Any owned automobile

(2) ☐ Any hired automobile

(3) ☒ Any licensed owned private passenger automobile

(4) ☐ Any automobile described in the schedule and designated "M.P."

(5) ☐ Any non-owned automobile

(6) ☐

DESIGNATED PERSON INSURED Division 2.

**PROTECTION AGAINST UNINSURED MOTORISTS INSURANCE**

DESIGNATED INSURED:

Description of Insured Highway Vehicles (Check appropriate box)

☒ Any automobile owned by the named insured

☐ Any private passenger automobile owned by the named insured

☐ Any highway vehicle to which are attached dealer's license plates issued to the named insured

☐ Any highway vehicle designated in the schedule of the policy by the letters "UM" and a highway vehicle ownership of which is acquired during the policy period by the named insured as a replacement therefor

☐ Any mobile equipment owned or leased by and registered in the name of the named insured

☐

## COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE
## COMPREHENSIVE GENERAL LIABILITY INSURANCE

**I. COVERAGE AC—BODILY INJURY LIABILITY**

**COVERAGE BD—PROPERTY DAMAGE LIABILITY**

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

AC. bodily injury or
BD. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions**

This insurance does not apply:

(a) to bodily injury or property damage for which insurance is afforded under a Comprehensive Personal Liability Endorsement Insurance Coverage Part or Farmer's Comprehensive Personal Insurance Coverage Part forming part of this policy or for which insurance would have been afforded but for the exhaustion of the limits of liability thereunder;

(b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of (1) any aircraft owned or operated by or rented or loaned to the named insured, or (2) any other aircraft operated by any person in the course of his employment by the named insured;

(c) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured; but this exclusion does not apply to liability assumed by the insured under any contract or agreement;

(d) to any obligation for which the insured may be held liable in an action on contract or agreement by a third party beneficiary for bodily injury or property damage arising out of a project for a public authority; but this exclusion does not apply to an action by the public authority or any other person or organization engaged in the project;

(e) to bodily injury or property damage due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to
(1) liability assumed by the insured under any contract or agreement, or
(2) expenses for first aid under the Supplementary Payments provision;

(f) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(g) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

CNA CONTINENTAL NATIONAL AMERICAN GROUP

to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

property damage to

property owned or occupied by or rented to the insured (except property damage to a rented residence or private garage caused by a private passenger automobile) or property held by the insured for sale,

property while on premises owned by or rented to the insured for the purpose of having operations performed on such property by or on behalf of the insured, or property entrusted to the insured for storage or safekeeping,

tools or equipment while being used by the insured in performing his operations,

. that particular part of any property, not on premises owned by or rented to the insured, the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured, or

. property which is being transported by the insured by motor vehicle or team, including the loading or unloading thereof,

ut subparagraphs (2), (3), (4) and (5) of this exclusion do not apply with espect to liability under a written sidetrack agreement or with respect to property damage arising out of the use of an elevator at premises owned by, rented to, or controlled by the named insured (other than property damage to an elevator).

o property damage to premises alienated by the named insured arising out of such premises or any part thereof;

o bodily injury or property damage resulting from the failure of the named insured's products or work completed by or for the named insured to perform the function or serve the purpose intended by the named insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any insured; but this exclusion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products or work;

to property damage to the named insured's products arising out of such products or any part of such products;

if the insured or his indemnitee is an architect, engineer or surveyor, to bodily injury or property damage arising out of any professional services performed by or for such insured or indemnitee, including

(1) the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications and

(2) supervisory, inspection or engineering services:

PERSONS INSURED

ach of the following is an insured under this insurance to the extent set h below:

the named insured;

except with respect to the ownership, maintenance or use, including the loading or unloading thereof, of an automobile or the operation, for the purpose of locomotion upon a public highway of mobile equipment registered under any motor vehicle registration law

(1) if the named insured is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor;

(2) if the named insured is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such:

(3) if the named insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

(4) any person (other than an employee of the named insured) or organization while acting as real estate manager for the named insured; and

with respect to the ownership, maintenance or use, including the loading or unloading thereof, of an automobile

(1) any partner or executive officer thereof, but with respect to a non-owned automobile only while such automobile is being used in the business of the named insured;

(2) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is:

a lessee or borrower of the automobile, or

an employee of the named insured or of such lessee or borrower;

(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a) or (c) above.

None of the following is an insured:

(i) any person while engaged in the business of his employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment;

(ii) the owner or lessee (of whom the named insured is a sub-lessee) of a hired automobile or the owner of a non-owned automobile, or the owner of an automobile leased under contract for one year or more to the named insured, or any agent or employee of any such owner or lessee;

(iii) an executive officer with respect to an automobile owned by him or by a member of his household;

(iv) any person or organization, other than the named insured, with respect to:

(1) a motor vehicle while used with any trailer owned or hired by such person or organization and not covered by like insurance in the company (except a trailer designed for use with a private passenger automobile and not being used for business purposes with another type motor vehicle), or

(2) a trailer while used with any motor vehicle owned or hired by such person or organization and not covered by like insurance in the company;

(v) any person while employed in or otherwise engaged in duties in connection with an automobile business, other than an automobile business operated by the named insured.

(d) with respect to the operation, for the purpose of locomotion upon a public highway, of mobile equipment registered under any motor vehicle registration law,

(1) an employee of the named insured while operating any such equipment in the course of his employment, and

(2) any other person while operating with the permission of the named insured any such equipment registered in the name of the named insured and any person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization;

provided that no person or organization shall be an insured under this paragraph (d) with respect to:

(1) bodily injury to any fellow employee of such person injured in the course of his employment, or

(2) property damage to property owned by, rented to, in charge of or occupied by the named insured or the employer of any person described in subparagraph (2).

This insurance does not apply to bodily injury or property damage arising out of (1) the conduct of any partnership or joint venture of which the insured is a partner or member and which is not designated in this policy as a named insured but this subdivision (1) does not apply to owned automobiles and hired automobiles or (2) if the named insured is a partnership, an automobile owned by or registered in the name of a partner thereof.

III. LIMITS OF LIABILITY

Regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, (3) claims made or suits brought on account of bodily injury or property damage, or (4) automobiles to which this policy applies the company's liability is limited as follows:

A. Divided Limits Plan

Coverage AC—The limit of bodily injury liability stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one occurrence; but subject to the above provision respecting "each person", the total liability of the company for all damages because of bodily injury sustained by two or more persons as the result of any one occurrence shall not exceed the limit of bodily injury liability stated in the schedule as applicable to "each occurrence".

Subject to the above provisions respecting "each person" and "each occurrence", the total liability of the company for all damages because of (1) all bodily injury included within the completed operations hazard and (2) all bodily injury included within the products hazard shall not exceed the limit of bodily injury liability stated in the schedule as "aggregate".

Coverage BD—The total liability of the company for all damages because of all property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limit of property damage liability stated in the schedule as applicable to "each occurrence".

Subject to the above provision respecting "each occurrence", the total liability of the company for all damages because of all property damage to which this coverage applies and described in any of the numbered subparagraphs below shall not exceed the limit of property damage liability stated in the schedule as "aggregate":

(1) all property damage except

(a) property damage arising out of Comprehensive Automobile Liability Insurance and

(b) all property damage included in the products hazard and all property damage included in the completed operations hazard.

(2) all property damage included in the products hazard and all property damage included in the completed operations hazard.

Such aggregate limit shall apply separately to property damage described in subparagraph (1) and (2) above and under subparagraph (1) separately with respect to each project away from premises owned by or rented to the named insured.

B. Combined Limits Plan

Coverages AC and BD Combined—The limit of liability stated in the schedule as applicable to "each occurrence" is the total limit of the company's liability under Coverages AC and BD combined for all damages as the result of any one occurrence; provided with respect to any occurrence for which notice of this policy is given in lieu of security or when this policy is cer-

tified as proof of financial responsibility for th[illegible] under the provisions of the motor vehicle financial responsibility [illegible] any state or province. such limit of liability shall be applied to provide the separate limits required by such law for bodily injury liability and property damage liability to the extent of the coverage required by such law, but the separate application of such limit shall not increase the total limit of the company's liability.

Subject to the above provision respecting "each occurrence", the total liability of the company for all damages because of all **bodily injury** and **property damage** to which this coverage applies described in any of the numbered subparagraphs below shall not exceed the limit of liability stated in the schedule as "aggregate":

(1) all **property damage** except

(a) all **property damage** arising out of **Comprehensive Automobile Liability Insurance** and

(b) all **property damage** included in the **products hazard** and all **property damage** included in the **completed operations hazard**;

(2) all **bodily injury** and **property damage** included within the **completed operations hazard** and all **bodily injury** and **property damage** included within the **products hazard**.

**Coverages AC, BD and AC and BD Combined**—For the purpose of determining the limit of the company's liability, all **bodily injury** and **property damage** arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one **occurrence**.

### IV. POLICY PERIOD

This insurance applies only to **bodily injury** or **property damage** which occurs during the policy period.

### V. AMENDED CONDITIONS

*With reference to this insurance the Conditions are amended as follows:*

**Other Insurance**

(1) When the **insured** has other insurance applicable to the loss, the amount of the company's liability hereunder shall be reduced by the amount of such other insurance; provided however,

With respect to loss arising out of any **non-owned automobile** this insurance shall be excess over and above other insurance available to the insured.

(2) This Other Insurance Condition does not apply to any insurance which has been specifically purchased as being in excess of this insurance.

### VI. ADDITIONAL CONDITIONS

**Arbitration.** The company shall be entitled to exercise all of the **insured's** rights in the choice of arbitrators and in the conduct of any arbitration proceeding.

### VII. AMENDED DEFINITI[illegible]

With reference to t[illegible] insurance the definitions are amended as follows:

"elevator" means any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery; but does not include an automobile servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property or a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet, or hydraulic or mechanical hoists used for dumping materials from trucks.

### VIII. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"**automobile business**" means the business or occupation of selling, repairing, servicing, storing or parking **automobiles**;

"**comprehensive automobile liability insurance**" means such insurance as is afforded for liability arising out of the ownership, maintenance or use including loading and unloading of any **automobile**;

"**comprehensive general liability insurance**" means such insurance as is afforded except that provided for **comprehensive automobile liability insurance**;

"**hired automobile**" means an automobile not owned by the **named insured** which is used under contract in behalf of, or loaned to, the **named insured**, provided such **automobile** is not owned by, leased under contract for one year or more, or registered in the name of (a) a partner or executive officer of the **named insured** or (b) an employee or agent of the **named insured** who is granted an operating allowance of any sort for the use of such **automobile**;

"**non-owned automobile**" means an **automobile** which is neither an **owned automobile** nor a **hired automobile**;

"**owned automobile**" means an **automobile** owned by or leased under contract for one year or more to the **named insured**;

"**private passenger automobile**" means a four wheel private passenger or station wagon type **automobile**;

"**suit**" includes an arbitration proceeding to which the **insured** is required to submit or to which the insured has submitted with the company's consent;

"**trailer**" includes semitrailer but does not include **mobile equipment**.

## AUTOMOBILE MEDICAL PAYMENTS INSURANCE

### I. COVERAGE F—AUTOMOBILE MEDICAL PAYMENTS

The company will pay all reasonable **medical expense** incurred within one year from the date of the accident:

**Division 1.** to or for each person who sustains **bodily injury**, caused by accident, while **occupying** a **designated automobile** which is being used by a person for whom **bodily injury** liability insurance is afforded under this policy with respect to such use;

**Division 2.** to or for each **insured** who sustains **bodily injury**, caused by accident, while **occupying** or, while a pedestrian, through being struck by a **highway vehicle**.

**Exclusions**

This insurance does not apply:

(a) to **bodily injury** to any person or **insured** while employed or otherwise engaged in duties in connection with an **automobile business**, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law;

(b) to **bodily injury** due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(c) under Division 1, to **bodily injury** to any employee of the **named insured** arising out of and in the course of employment by the **named insured**, but this exclusion does not apply to any such **bodily injury** arising out of and in the course of domestic employment by the **named insured** unless benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law;

(d) under Division 2, to **bodily injury** sustained while **occupying** a **highway vehicle** owned by any **insured**, or furnished for the regular use of any **insured** by any person or organization other than the **named insured**.

### II. PERSONS INSURED—DIVISION 2.

Each of the following is an insured under this insurance to the extent set forth below:

(a) any person designated as **insured** in the schedule;

(b) while residents of the same household as such designated person, his spouse and the relatives of either;

and if such designated person shall die, any person who was an insured at the time of such death shall continue to be an insured.

### III. LIMIT OF LIABILITY

The limit of liability for Automobile Medical Payments Coverage stated in the schedule as applicable to "each person" is the limit of the company's liability for all **medical expense** for **bodily injury** to any person, including any **insured**, as the result of any one accident.

*When more than one medical payments coverage afforded by this policy applies to the loss, the company shall not be liable for more than the amount of the highest applicable limit of liability.*

### IV. ADDITIONAL DEFINITIONS

The amended and additional definitions applicable to **Comprehensive Automobile Liability Insurance** also apply to this insurance; and when used in reference to this insurance (including endorsements forming a part of the policy):

"**designated automobile**" means an **automobile** designated in the schedule and includes:

(a) an **automobile** not owned by the **named insured** while temporarily used as a substitute for an **owned automobile** designated in the schedule when withdrawn from normal use for servicing or repair or because of its breakdown, loss or destruction; and

(b) a trailer designed for use with a **private passenger automobile**, if not being used for business purposes with another type **automobile** and if not a home, office, store, display or passenger trailer;

"**highway vehicle**" means a land motor vehicle or trailer other than

(a) a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads,

(b) a vehicle operated on rails or crawler-treads, or

(c) a vehicle while located for use as a residence or premises;

"**medical expense**" means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services;

"**occupying**" means in or upon or entering into or alighting from.

### V. POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur during the policy period within the **policy territory**.

### VI. ADDITIONAL CONDITIONS

**A. Medical Reports; Proof and Payment of Claim**

As soon as practicable the injured person or someone on his behalf shall give to the company written proof of claim, under oath if required, and shall, after each request from the company, execute authorization to enable the company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the company when and as often as the company may reasonably require. The company may pay the injured person or any person or organization rendering the services an-

such payment shall reduce the amount payab[illegible] r for such injury. Payment hereunder shall not constitute an adm[illegible] iability of any person or, except hereunder, of the company.

. Excess Insurance

Except with respect to an **owned automobile**, the insurance under Division 1 shall be excess ins[illegible] r any other valid and collectible automobile medical payments or [illegible] e **medical expense** insurance.

The insurance under Division 2 shall be excess insurance over any other valid and collectible automobile medical payments or automobile medical expense insurance available to the **insured** under any other policy.

## PROTECTION AGAINST UNINSURED MOTORISTS INSURANCE

### I. COVERAGE U—UNINSURED MOTORISTS

(Damages for Bodily Injury)

The company will pay all sums which the **insured** or his legal representative shall be legally entitled to recover as damages from the owner or operator of an **uninsured highway vehicle** because of **bodily injury** sustained by the **insured**, caused by accident and arising out of the ownership, maintenance or use of such **uninsured highway vehicle**; provided, for the purposes of this coverage, determination as to whether the **insured** or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the **insured** or such representative and the company or, if they fail to agree, by arbitration.

No judgment against any person or organization alleged to be legally responsible for the **bodily injury** shall be conclusive, as between the **insured** and the company, of the issues of liability of such person or organization or of the amount of damages to which the **insured** is legally entitled unless such judgment is entered pursuant to an action prosecuted by the **insured** with the written consent of the company.

**Exclusions**

This insurance does not apply:

(a) to **bodily injury** to an **insured** with respect to which such **insured**, his legal representative or any person entitled to payment under this insurance shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor;

(b) to **bodily injury** to an insured while **occupying** a **highway vehicle** (other than an **insured highway vehicle**) owned by the **named insured**, any **designated insured** or any relative resident in the same household as the **named** or **designated insured**, or through being struck by such a vehicle, but this exclusion does not apply to the **named insured** or his relatives while **occupying** or if struck by a **highway vehicle** owned by a **designated insured** or his relatives;

(c) so as to inure directly or indirectly to the benefit of any workmen's compensation or disability benefits carrier or any person or organization qualifying as a self-insurer under any workmen's compensation or disability benefits law or any similar law.

### II. PERSONS INSURED

Each of the following is an **insured** under this insurance to the extent set forth below:

(a) the **named insured** and any **designated insured** and, while residents of the same household, the spouse and relatives of either;

(b) any other person while **occupying** an **insured highway vehicle**; and

(c) any person, with respect to damages he is entitled to recover because of **bodily injury** to which this insurance applies sustained by an **insured** under (a) or (b) above.

The insurance applies separately with respect to each **insured**, except with respect to the limits of the company's liability.

### III. LIMITS OF LIABILITY

Regardless of the number of **insureds** under this policy, the company's liability is limited as follows:

(a) The limit of liability stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages because of **bodily injury** sustained by one person as the result of any one accident and, subject to the above provision respecting "each person", the limit of liability stated in the schedule as applicable to "each accident" is the total limit of the company's liability for all damages because of **bodily injury** sustained by two or more persons as the result of any one accident.

(b) Any amount payable under the terms of this insurance because of **bodily injury** sustained in an accident by a person who is an **insured** under this coverage shall be reduced by

(1) all sums paid on account of such **bodily injury** by or on behalf of

(i) the owner or operator of the **uninsured highway vehicle** and

(ii) any other person or organization jointly or severally liable together with such owner or operator for such **bodily injury**,

including all sums paid under the bodily injury liability coverage of the policy, and

(2) the amount paid and the present value of all amounts payable on account of such **bodily injury** under any workmen's compensation law, disability benefits law or any similar law.

(c) Any payment made under this insurance to or for any **insured** shall be applied in reduction of the amount of **damages** which he may be entitled to recover from any person **insured** under the **bodily injury** liability coverage of the policy.

(d) The company shall not be obligated to pay under this insurance that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured highway vehicle which represents expenses for medical services paid or payable under the medical payments coverage of the policy.

### IV. POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur during the policy period and within the United States of America, its territories or possessions, or Canada.

### V. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"**designated insured**" means an individual named in the schedule under **Designated Insured**;

"**highway vehicle**" means a land motor vehicle or trailer other than

(a) a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads,

(b) a vehicle operated on rails or crawler-treads, or

(c) a vehicle while located for use as a residence or premises;

"**hit-and-run vehicle**" means a **highway vehicle** which causes **bodily injury** to an **insured** arising out of physical contact of such vehicle with the **insured** or with a vehicle which the **insured** is **occupying** at the time of the accident, provided:

(a) there cannot be ascertained the identity of either the operator or owner of such **highway vehicle**;

(b) the **insured** or someone on his behalf shall have reported the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with the company within 30 days thereafter a statement under oath that the **insured** or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and

(c) at the company's request, the **insured** or his legal representative makes available for inspection the vehicle which the **insured** was **occupying** at the time of the accident;

"**insured highway vehicle**" means a **highway vehicle**:

(a) described in the schedule as an **insured highway vehicle** to which the **bodily injury** liability coverage of the policy applies;

(b) while temporarily used as a substitute for an **insured highway vehicle** as described in subparagraph (a) above, when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

(c) while being operated by the **named** or **designated insured** or by the spouse of either if a resident of the same household;

but the term "**insured highway vehicle**" shall not include:

(i) a vehicle while used as a public or livery conveyance, unless such use is specifically declared and described in this policy;

(ii) a vehicle while being used without the permission of the owner;

(iii) under subparagraphs (b) and (c) above, a vehicle owned by the **named insured**, any **designated insured** or any resident of the same household as the **named** or **designated insured**; or

(iv) under subparagraphs (b) and (c) above, a vehicle furnished for the regular use of the **named insured** or any resident of the same household;

"**occupying**" means in or upon or entering into or alighting from;

"**state**" includes the District of Columbia, a territory or possession of the United States, and a province of Canada;

"**uninsured highway vehicle**" means:

(a) a **highway vehicle** with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the **state** in which the **insured highway vehicle** is principally garaged, no **bodily injury** liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle, or with respect to which there is a **bodily injury** liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder; or

(b) a **hit-and-run vehicle**;

but the term "**uninsured highway vehicle**" shall not include:

(i) an **insured highway vehicle**,

(ii) a **highway vehicle** which is owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law,

(iii) a highway vehicle which is owned by th  tates of America, Canada, a state, a political subdivision of a vernment or an agency of any of the foregoing.

VI. ADDITIONAL CONDITIONS

A. Premium.

If during the policy period the number of insured highway vehicles owned by the named insured or spouse or the number of dealer's license plates issued to the named insured changes, the named insured shall notify the company during the policy period of any change and the premium shall be adjusted in accordance with the manuals in use by the company. If the earned premium thus computed exceeds the advance premium paid, the named insured shall pay the excess to the company; if less, the company shall return to the named insured the unearned portion paid by such insured.

B. Proof of Claim; Medical Reports.

As soon as practicable, the insured or other person making claim shall give to the company written proof of claim, under oath if required, including full particulars of the nature and extent of the injuries, treatment, and other details entering into the determination of the amount payable hereunder. The insured and every other person making claim hereunder shall submit to examinations under oath by any person named by the company and subscribe the same, as often as may reasonably be required. Proof of claim shall be made upon forms furnished by the company unless the company shall have failed to furnish such forms within 15 days after receiving notice of claim.

The injured person shall submit to physical examinations by physicians selected by the company when and as often as the company may reasonably require and he, or in the event of his incapacity his legal representative, or in the event of his death his legal representative or the person or persons entitled to sue therefor, shall upon each request from the company execute authorization to enable the company to obtain medical reports and copies of records.

C. Assistance and Cooperation of the Insured.

After notice of claim under this insurance, the company may require the insured to take such action as may be necessary or appropriate to preserve his right to recover damages from any person or organization alleged to be legally responsible for the bodily injury; and in any action against the company, the company may require the insured to join such person or organization as a party defendant.

D. Notice of Legal Action.

If, before the company makes payment of loss hereunder, the insured or his legal representative shall institute any legal action for bodily injury against any person or organization legally responsible for the use of a highway vehicle involved in the accident, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded immediately to the company by the insured or his legal representative.

E. Other Insurance.

With respect to bodily injury to an insured while occupying a highway vehicle not owned by the named insured, this insurance shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such vehicle as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

Except as provic foregoing paragraph, if the insured has other similar insurance a him and applicable to the accident, the damages shall be deemed n , exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance.

F. Arbitration.

If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured highway vehicle because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this insurance, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration, which shall be conducted in accordance with the rules of the American Arbitration Association unless other means of conducting the arbitration are agreed to between the insured and the company, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this insurance.

G. Trust Agreement.

In the event of payment to any person under this insurance:

(a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made;

(b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization because of the damages which are the subject of claim made under this insurance;

(c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

(d) if requested in writing by the company, such person shall take, through any representative designated by the company, such action as may be necessary or appropriate to recover such payment as damages from such other person or organization, such action to be taken in the name of such person; in the event of a recovery, the company shall be reimbursed out of such recovery for expenses, costs and attorneys' fees incurred by it in connection therewith;

(e) such person shall execute and deliver to the company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the company established by this provision.

H. Payment of Loss by the Company.

Any amount due hereunder is payable

(a) to the insured, or

(b) if the insured be a minor to his parent or guardian, or

(c) if the insured be deceased to his surviving spouse, otherwise

(d) to a person authorized by law to receive such payment or to a person legally entitled to recover the damages which the payment represents;

provided, the company may at its option pay any amount due hereunder in accordance with division (d) hereof.



COVERAGE PART

PERSONAL INJURY LIABILITY INSURANCE

PIL

For attachment to Policy No. CCP 9034300

2

SCHEDULE

The insurance afforded is only with respect to **personal injury** arising out of an offense included within such of the following groups of offenses as are indicated by specific premium charge or charges.

| | Coverage | LIMITS OF LIABILITY | |
|---|---|---|---|
| | | EACH PERSON AGGREGATE | GENERAL AGGREGATE |
| Personal Injury Liability Insurance | P—Personal Injury | $ 300,000. | $ 500,000. |
| | | % Insured's Participation | |

| Groups of Offenses | | Advance Premiums |
|---|---|---|
| A. False Arrest, Detention or Imprisonment, or Malicious Prosecution | | $ INCLUDED |
| B. Libel, Slander, Defamation or Violation of Right of Privacy | | $ INCLUDED |
| C. Wrongful Entry or Eviction or Other Invasion of Right of Private Occupancy | | $ INCLUDED |
| Rate INCL% of Premises Operations bodily injury premium | Minimum Premium $ Advance Premium | $ INCLUDED |
| | Additional premium charge deletes exclusion (c) | $ INCLUDED |
| | Total Advance Premium | $ INCLUDED |

**I. COVERAGE P—PERSONAL INJURY LIABILITY**

The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as **damages** because of injury (herein called **"personal injury"**) sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the **named insured's** business:

Group A—false arrest, detention or imprisonment, or malicious prosecution;

Group B—the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the **named insured**;

Group C—wrongful entry or eviction, or other invasion of the right of private occupancy;

if such offense is committed during the policy period within the United States of America, its territories or possessions, or Canada, and the company shall have the right and duty to defend any suit against the **insured** seeking **damages** on account of such **personal injury** even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions**

This insurance does not apply:

(a) to liability assumed by the **insured** under any contract or agreement;

(b) to **personal injury** arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any **insured**;

(c) to **personal injury** sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the **named insured**;

(d) to **personal injury** arising out of any publication or utterance described in Group B, if the first injurious publication or utterance of the same or similar material by or on behalf of the **named insured** was made prior to the effective date of this insurance;

(e) to **personal injury** arising out of a publication or utterance described in Group B concerning any organization or business enterprise, or its products or services, made by or at the direction of any **insured** with knowledge of the falsity thereof.

**II. PERSONS INSURED**

Each of the following is an **insured** under this insurance to the extent set forth below:

(a) if the **named insured** is designated in the declarations as an individual, the person so designated;

(b) if the **named insured** is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the **named insured** is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such.

This insurance does not apply to **personal injury** arising out of the conduct of any partnership or joint venture of which the **insured** is a partner or member and which is not designated in this policy as a **named insured**.

**III. LIMITS OF LIABILITY; INSURED'S PARTICIPATION**

Regardless of the number of (1) **insureds** under this policy, (2) persons or organizations who sustain **personal injury**, or (3) claims made or suits brought on account of **personal injury**, the total liability of the company for all **damages** because of all **personal injury** to which this coverage applies, sustained by any one person or organization, shall not exceed the limit of **personal injury** liability stated in the schedule as "each person aggregate".

Subject to the above provision respecting "each person aggregate", the total limit of the company's liability under this coverage for all **damages** shall not exceed the limit of **personal injury** liability stated in the schedule as "general aggregate".

If a participation percentage is stated in the schedule for the **insured**, the company shall not be liable for a greater proportion of any loss than the difference between such percentage and one hundred percent and the balance of the loss shall be borne by the **insured**; provided, the company may pay the **insured's** portion of a loss to effect settlement of the loss, and, upon notification of the action taken, the **named insured** shall promptly reimburse the company therefor.

**IV. AMENDED DEFINITION**

When used in reference to this insurance:

**"damages"** means only those damages which are payable because of **personal injury** arising out of an offense to which this insurance applies.



PHD

COVERAGE PART

AUTOMOBILE PHYSICAL DAMAGE

SCHEDULE

For attachment to Policy No. CCP 9034300

. 3. . . . .

The insurance afforded is only with respect to such of the Coverages as are indicated by specific premium charge or charges and then only to
a) the units that have a specific premium charged to indicate coverage and
b) if Fleet Automatic, such coverage for newly acquired automobiles as is designated by Code Number (s).*

| | Coverage(s) | LIMITS OF LIABILITY | ADVANCE PREMIUMS |
|---|---|---|---|
| Automobile Physical Damage Insurance<br>Fleet Automatic X Yes ☐ No<br>Absence of entry means X No | O—COMPREHENSIVE<br>P—COLLISION<br>Q—FIRE, LIGHTNING OR TRANSPORTATION<br>R—THEFT<br>S—WINDSTORM, HAIL, EARTHQUAKE OR EXPLOSION<br>T—COMBINED ADDITIONAL<br>V—TOWING | Insurance is afforded only with respect to such covered automobiles as are designated in the schedule subject to the Limits of Liability indicated therein. The insurance for any described covered automobile applies also to its replacement, subject to all the terms of the policy having reference thereto<br><br>$25 for each disablement | $ INCL.<br>$ INCL.<br>$<br>$<br>$<br>$<br>$ |
| | | Total Advance Premium | INCL. |

**COVERED AUTOMOBILES**

| Unit No. | Town and State in Which Automobile Will Be Principally Garaged | Year of Model and Trade Name | Body Type and Model- Truck Size Tank Gallonage Capacity, or Bus Seating Capacity | (M) Motor No. or (S) Serial No. |
|---|---|---|---|---|
| | PER SCHEDULE IN COMPANY FILES | | | |

Purposes of Use (P & B = Pleasure and Business; C = Commercial) "ACV" = Actual Cash Value

| Unit No. | Radius of Operations in miles | Month & Year Purchased | N or U | Rating Sym. or Original Cost New Incl. Equip. | Purpose of Use | Classification | Rates | LIMIT OF LIABILITY Each covered automobile described above and covered for: Coverages other than Collision — Enter: Amt. or "ACV" | Deductible | Collision — Enter: "ACV" | Deductible |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | ACV | 250. | ACV<br>ACV<br>ACV | 250. |

Any loss under Coverages other than Towing is payable as interest may appear to the named insured and the Loss Payee named below

| Unit No. | Comprehensive | Collision | Fire, Lightning or Transportation | Theft | Windstorm, Hail, Earthquake or Explosion | Combined Additional | Towing |
|---|---|---|---|---|---|---|---|
| | $<br>$<br>$ | $<br>$<br>$ | $<br>$<br>$ | $<br>$<br>$ | $<br>$<br>$ | $<br>$<br>$ | $<br>$<br>$ |
| Code Number(s) for Newly Acquired Vehicles (Fleet Automatic)* | 1 | 1 | | | | | |

**APPLICABLE TO FLEET AUTOMATIC ONLY**

*Code Number(s) for Newly Acquired Vehicles

Enter one or more of the following code numbers after "Newly Acquired Vehicles (For Fleet Automatic)" to indicate the coverages applicable to any newly acquired vehicle (other than replacements):

1 = all covered automobiles
2 = all registered covered automobiles
3 = all covered automobiles of the private passenger type
4 = all covered automobiles of the commercial type
5 = excluding vehicles leased to the named insured
6 = excluding, under Collision Coverage, any vehicle not having an Actual Cash Value of at least $. . . . . . . . . . . . . . . .

Maximum Limit of Liability

| | |
|---|---|
| Any one covered automobile | $ 20,000. |
| All covered automobiles at any one location | $ 150,000. |
| All covered automobiles | $ 300,000. |

Records to be submitted:

X Annually ☐ semi-annually ☐ quarterly ☐ monthly

(over)

C 21640 A



# AUTOMOBILE PHYSICAL DAMAGE INSURANCE

I. AGREEMENTS

The company will pay for loss to covered automobiles under:

Coverage O — COMPREHENSIVE

from any cause except collision; but, for the purpose of this coverage, breakage of glass and loss caused by missiles, falling objects, fire, theft or larceny, windstorm, hail, earthquake, explosion, riot or civil commotion, malicious mischief or vandalism, water, flood, or (as to a covered automobile of the private passenger type) colliding with a bird or animal, shall not be deemed loss caused by collision;

Coverage P — COLLISION

caused by collision;

Coverage Q — FIRE, LIGHTNING OR TRANSPORTATION

caused by

(a) fire or lightning,

(b) smoke or smudge due to a sudden, unusual and faulty operation of any fixed heating equipment serving the premises in which the covered automobile is located, or

(c) the stranding, sinking, burning, collision or derailment of any conveyance in or upon which the covered automobile is being transported;

Coverage R — THEFT

caused by theft or larceny;

Coverage S — WINDSTORM, HAIL, EARTHQUAKE OR EXPLOSION

caused by windstorm, hail, earthquake or explosion;

Coverage T — COMBINED ADDITIONAL

caused by

(a) windstorm, hail, earthquake or explosion,

(b) riot or civil commotion,

(c) the forced landing or falling of any aircraft or its parts or equipment,

(d) malicious mischief or vandalism,

(e) flood or rising waters, or

(f) external discharge or leakage of water;

provided that, with respect to each covered automobile,

(i) under the Comprehensive coverage (except as to loss from any of the causes described in the Fire, Lightning or Transportation coverage) and under the Collision coverage, such payment shall be only for the amount of each loss in excess of the deductible amount, if any, stated in the schedule as applicable thereto;

(ii) under the Combined Additional coverage, $25 shall be deducted from the amount of each loss caused by malicious mischief or vandalism.

. The company will pay under

Coverage V — TOWING COVERAGE

for towing and labor costs necessitated by the disablement of covered automobiles, provided the labor is performed at the place of disablement.

. SUPPLEMENTARY PAYMENTS

In addition to the applicable limits of liability, the company will:

(a) with respect to such transportation insurance as is afforded herein, pay general average and salvage charges for which the named insured becomes legally liable;

(b) reimburse the named insured, in the event of a theft covered by this insurance of an entire covered automobile of the private passenger type (not used as a public or livery conveyance and not, at time of theft, being held for sale by an automobile dealer), for expense incurred for the rental of a substitute for such covered automobile during the period commencing 48 hours after such theft has been reported to the company and the police and terminating, regardless of expiration of the policy period, when such covered automobile is returned to use or the company pays for the loss; but, as to any one such theft, such reimbursement shall not exceed $10 for any one day nor $300 total.

. Such insurance as is afforded under each coverage applies separately to each covered automobile, and a land motor vehicle and one or more trailers or semitrailers attached thereto shall be held to be separate covered automobiles as respects limits of liability and any deductible provisions applicable thereto.

Exclusions

This insurance does not apply

(a) to any covered automobile while used as a public or livery conveyance, unless such use is specifically declared and described in the schedule;

(b) to damage which is due and confined to

(i) wear and tear, or

(ii) freezing, or

(iii) mechanical or electrical breakdown or failure,

unless such damage is the result of other loss covered by this insurance;

(c) to tires, unless

(i) loss be coincident with and from the same cause as other loss covered by this insurance; or

(ii) damaged by fire (and, if a covered automobile of the private passenger type, by malicious mischief or vandalism) or stolen and, as to the covered automobile, loss caused by such damage or theft is covered by this insurance;

(d) to loss due to

(i) war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(ii) radioactive contamination;

(e) under the Comprehensive and Theft coverages, to loss or damage due to conversion, embezzlement or secretion by any person in possession of a covered automobile under a bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance;

(f) under the Collision coverage, to breakage of glass if insurance with respect to such breakage is otherwise afforded herein;

(g) under the Windstorm, Hail, Earthquake or Explosion and Combined Additional coverages, to loss resulting from rain, snow or sleet, whether or not wind-driven.

II. LIMIT OF LIABILITY

1. The limit of the company's liability for loss to any one covered automobile shall not exceed the least of the following amounts:

(a) the actual cash value of such covered automobile, or if the loss is to a part thereof the actual cash value of such part, at time of loss; or

(b) what it would then cost to repair or replace such covered automobile or part thereof with other of like kind and quality, with deduction for depreciation; or

(c) the limit of liability stated in the schedule as applicable to "each covered automobile" under the coverage afforded for the loss to such covered automobile, provided that if such limit of liability is expressed as a stated amount it shall, with respect to a covered automobile newly acquired during the policy period and not described in the schedule, be deemed as having been replaced by "actual cash value";

and, if this insurance is stated in the schedule as being "Fleet Automatic," subject to the above provisions, shall not in any event exceed the amount, if any, stated in the schedule as the "maximum limit of liability" applicable to "any one covered automobile."

2. If this insurance is stated in the schedule as being "Fleet Automatic," the total limit of the company's liability for all loss directly attributable to a single happening out of which loss occurs shall not exceed:

(a) as to all covered automobiles at any one location, the amount, if any, stated in the schedule as the "maximum limit of liability" applicable thereto, subject to the above provisions respecting any one covered automobile;

(b) as to all covered automobiles, the amount, if any, stated in the schedule as the "maximum limit of liability" applicable thereto, subject to the above provisions respecting (i) any one covered automobile and (ii) any one location.

III. POLICY PERIOD; TERRITORY; PURPOSES OF USE

This insurance applies only to loss which occurs during the policy period, while the covered automobile is within the United States of America, its territories or possessions, or Canada, or is being transported between ports thereof and, if a covered automobile described in the schedule, is maintained and used for the purposes stated therein as applicable thereto.

IV. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"collision" means (i) collision of a covered automobile with another object or with a vehicle to which it is attached, or (ii) upset of such covered automobile;

"commercial type" means, if this insurance is stated in the schedule as being "Fleet Automatic,"

(i) a land motor vehicle of the truck, pick-up, express, sedan or panel delivery type, including truck-type tractors, trailers and semitrailers, used for the transportation or delivery of goods or merchandise or for other business purposes, or

(ii) an altered private passenger type vehic[illegible] or retail or wholesale delivery;

"covered automobile" means a land motor vehicle, trailer or semitrailer, including its equipment and other equipment permanently attached thereto (but not including robes, wearing apparel or personal effects), which is either

(a) designated in the schedule, by description or otherwise, as a covered automobile to which this insurance applies and is:

(i) owned by the named insured, or

(ii) if this insurance is stated in the schedule as being "Fleet Automatic," leased to the named insured for a term of not less than one year under an agreement expressly prohibiting any right of the lessor or owner to use such vehicle during the term of such lease except either as an operator employed by the named insured or for its repair or exchange; or

(b) if not so designated, such vehicle is newly acquired by the named insured during the policy period provided, however, that:

(i) it replaces a described covered automobile, or as of the date of its delivery this insurance applies to all covered automobiles, and

(ii) the named insured notifies the company within 30 days following such delivery date;

but "covered automobile" does not include a vehicle owned by or registered in the name of any individual partner or executive officer of the named insured, unless specifically stated otherwise by endorsement forming a part of the policy;

"loss" means direct and accidental loss or damage;

"private passenger type" means a 4-wheel land motor vehicle of the private passenger or station wagon type;

as to "purposes of use":

"commercial" means use principally in the business occupation of the named insured as stated in the declarations, including occasional use for personal, pleasure, family and other business purposes:

"pleasure and business" means personal, pleasure, family and business use.

## V. CONDITIONS

None of the Conditions of the policy shall apply to this insurance except "Premium", "Inspection and Audit", "Subrogation", "Changes", "Assignment", "Three Year Policy", "Cancellation", and "Declarations". This insurance shall also be subject to the following additional Conditions:

### 1. Named Insured's Duties in Event of Loss

In the event of loss the named insured shall:

(a) protect the covered automobile, whether or not this insurance applies to the loss, and any further loss or damage due to the named insured's failure to protect shall not be recoverable under this insurance; reasonable expenses incurred in affording such protection shall be deemed incurred at the company's request;

(b) give notice thereof as soon as practicable to the company or any of its authorized agents and also, in the event of theft or larceny, to the police;

(c) file with the company, within 91 days after loss, his sworn proof of loss in such form and including such information as the company may reasonably require and, upon the company's request, shall exhibit the damaged property and submit to examination under oath;

(d) cooperat[illegible] company and, upon the company's request, shall assist in [illegible] settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the named insured because of loss with respect to which this insurance applies; and shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses:

but the named insured shall not, except at his own cost, voluntarily make any payment, assume any obligation, offer or pay any reward for recovery of stolen property or incur any expense other than as specifically provided in this insurance.

### 2. Payment for Loss

With respect to any loss covered by this insurance, the company may pay for said loss in money, or may:

(a) repair or replace the damaged or stolen property, or

(b) return at its expense any stolen property to the named insured, with payment for any resultant damage thereto, at any time before the loss is so paid or the property is so replaced, or

(c) take all or any part of the damaged or stolen property at the agreed or appraised value,

but there shall be no abandonment to the company.

### 3. Appraisal

If the named insured and the company fail to agree as to the amount of loss, either may, within 60 days after proof of loss is filed, demand an appraisal of the loss. In such event the named insured and the company shall each select a competent appraiser, and the appraisers shall select a competent and disinterested umpire. The appraisers shall state separately the actual cash value and the amount of loss and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The named insured and the company shall each pay its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire.

The company shall not be held to have waived any of its rights by any act relating to appraisal.

### 4. Action Against Company

No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this insurance nor until 30 days after proof of loss is filed and the amount of loss is determined as provided in this insurance.

### 5. Other Insurance

If the named insured has other insurance against a loss covered by this insurance, the company shall not be liable under this insurance for a greater proportion of such loss than the applicable limit of liability stated in the schedule bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, with respect to any covered automobile newly acquired during the policy period and not described in the schedule, this insurance shall not apply to any loss against which the named insured has other valid and collectible insurance.

### 6. No Benefit to Bailee

None of the provisions of this insurance shall inure directly or indirectly to the benefit of any carrier or other bailee for hire.

### 7. Terms of Insurance Conformed to Statute

Terms of this insurance which are in conflict with the statutes of the state wherein this insurance is issued are hereby amended to conform to such statutes.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

- ☐ COMPREHENSIVE GENERAL LIABILITY INSURANCE
- ☐ COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE
- ☒ ALL COVERAGE PARTS
- ☐

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS UNDERSTOOD AND AGREED THE FOLLOWING SUBSIDIARY IS HEREBY EXCLUDED FROM THE CAPTIONED POLICY:

THE ALLEN SHERMAN-HOFF PUMP COMPANY.

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 2 | CCP 9034300 | ENVIROTECH CORPORATION | 5-29-72 |

JOHNSON & HIGGINS

9-20-72 CS

Countersigned by ______________________
Authorized Agent

Blank Endorsement
G-31821-A

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE

AUTOMOBILE MEDICAL PAYMENTS INSURANCE

SCHEDULE AUTOMOBILE LIABILITY INSURANCE

## APPLICATION OF INSURANCE TO OWNER OF HIRED AUTOMOBILE

With respect to the hired automobile described below or designated in the policy as subject to this endorsement, it is agreed that:

(1) The insurance applies as primary insurance.

(2) Subject otherwise to the Persons Insured provision, the insurance covers as an insured the owner, any lessee (of whom the named insured is a sub-lessee) and any agent or employee of such owner or lessee, but only while such automobile is used in the business of the named insured as stated in the declarations, or by or on behalf of the named insured for personal or pleasure purposes, and subparagraph (ii) of the Persons Insured provision is amended accordingly.

Description of Automobile: 1973 BMW #2587471 LEASE # 3290

ADDITIONAL INSURED: ALAMEDA FIRST NATIONAL BANK
P. O. BOX 433
ALAMEDA, CALIF. 94501

ATT. JULIE EVATT

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 3 | CCP 9034300 | ENVIROTECH CORPORATION | |

CNA/insurance

Countersigned by ______________________
Authorized Agent

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

☒ SPECIAL COMPREHENSIVE LIABILITY INSURANCE
☐
☐
☐

IT IS HEREBY UNDERSTOOD AND AGREED THAT THE LEASED VEHICLES AS DEFINED IN THIS POLICY SHALL BE VEHICLES LEASED TO THE NAMED INSURED FOR A PERIOD OF THIRTY (30) DAYS OR LONGER.

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| 4 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| ENVIROTECH CORPORATION | 4-13-73 |

CNA/insurance

5-17-73 SLS

JOHNSON & HIGGINS

Countersigned by [signature] Authorized Agent

Blank Endorsement
G-31821-B

This endorsement [illegible]es such insurance as is afforded by the [illegible] of the policy relating to the following designated insurance:

- [X] SPECIAL COMPREHENSIVE LIABILITY INSURANCE
- [ ]
- [ ]
- [ ]

ANNIVERSARY ENDORSEMENT

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $157,000. IT IS HEREBY AGREED THAT THIS POLICY IS EXTENDED FOR THE FOLLOWING PERIOD MAY 29, 1973 TO MAY 29, 1974.

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| 5 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| ENVIROTECH CORPORATION | 5-29-73 |

CNA/insurance

6-6-73 SE JOHNSON & HIGGINS

Clerk Endorsement
DG-31321-A

Countersigned by ______________________
Authorized Agent

This endorseme[illegible] such insurance as is afforded by the [illegible] of the policy relating to the following designated insurance:

☒ SPECIAL COMPREHENSIVE LIABILITY INSURANCE
☐
☐
☐

INSTALLMENT ENDORSEMENT

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS AGREED THAT THE ADVANCE PREMIUM FOR THIS POLICY IS PAYABLE AS FOLLOWS:

| DATE DUE | AMOUNT DUE |
|---|---|
| 5-29-73 | $13,087. |
| 6-29-73 | 13,083. |
| 7-29-73 | 13,083. |
| 8-29-73 | 13,083. |
| 9-29-73 | 13,083. |
| 10-29-73 | 13,083. |
| 11-29-73 | 13,083. |
| 12-29-73 | 13,083. |
| 1-29-74 | 13,083. |
| 2-29-74 | 13,083. |
| 3-29-74 | 13,083. |
| 4-29-74 | 13,083. |
| TOTAL | $157,000. |

Void
See End. # 8

N FRANCISCO BRANCH
) 6211 JUN 07 1973

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy. Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 6 | CCP 9034300 | ENVIROTECH CORPORATION | 5-29-73 |

CNA/insurance

6-6-73 SE JOHNSON & HIGGINS

Block Endorsement
DG 3182-A

Countersigned by ______________________
Authorized Agent

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

☒ SPECIAL COMPREHENSIVE LIABILITY INSURANCE
☐
☐
☐

IN CONSIDERATION OF THE PREMIUM CHARGED IT IS AGREED THAT ITEM #1 OF THE DECLARATIONS - NAMED INSURED - IS EXTENDED TO INCLUDE THE FOLLOWING ENTITES:

THE BAHNSON COMPANY

BAHNSON SERVICE COMPANY

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| 7 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| ENVIROTECH CORPORATION | 6-29-73 |

8-2-73 EA/SE JOHNSON & HIGGINS

CNA/insurance

Countersigned by ______ Authorized Agent

Blank Endorsement
G-31821-B

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

- [x] SPECIAL COMPREHENSIVE LIABILITY INSURANCE
- [x] AUTO PHYSICAL DAMAGE INSURANCE
- [ ]
- [ ]

ANNIVERSARY ENDORSEMENT

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $76,000., IT IS AGREED THAT THE POLICY IS EXTENDED FOR THE FOLLOWING PERIOD:

MAY 29, 1973 TO MAY 29, 1974

IT IS FURTHER AGREED THAT THE DEPOSIT PREMIUM AS SET FORTH ABOVE IS DUE AND PAYABLE AS FOLLOWS:

| DATE DUE | AMOUNT DUE | TOTAL |
|---|---|---|
| 5-29-73 | $ 6,337. | |
| 6-29-73 | 6,333. | |
| 7-29-73 | 6,333. | |
| 8-29-73 | 6,333. | |
| 9-29-73 | 6,333. | |
| 10-29-73 | 6,333. | |
| 11-29-73 | 6,333. | |
| 12-29-73 | 6,333. | |
| 1-29-74 | 6,333. | |
| 2-29-74 | 6,333. | |
| 3-29-74 | 6,333. | |
| 4-29-74 | 6,333. | $76,000. |

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| 8 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| ENVIROTECH CORPORATION | 5-29-73 |

CNA/insurance

9-10-73 SLS/EA

JOHNSON & HIGGINS

Countersigned by [signature] Authorized Agent

Blank Endorsement
G-31821-B

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

- ☒ SPECIAL COMPREHENSIVE LIABILITY INSURANCE
- ☒ AUTO PHYSICAL DAMAGE INSURANCE
- ☐
- ☐

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $33,410. , IT IS AGREED THAT THE FOLLOWING ENTITIES, BAHNSON CO. AND BAHNSON SERVICE CO., ARE COVERED. PREMIUM IS PAYABLE ON INSTALLMENTS AS FOLLOWS:

| DATE DUE | | AMOUNT DUE |
|---|---|---|
| 6-29-73 | | $ 3040. |
| 7-29-73 | | 3037. |
| 8-29-73 | | 3037. |
| 9-29-73 | | 3037. |
| 10-29-73 | | 3037. |
| 11-29-73 | | 3037. |
| 12-29-73 | | 3037. |
| 1-29-74 | | 3037. |
| 2-29-74 | | 3037. |
| 3-29-74 | | 3037. |
| 4-29-74 | | 3037. |
| | TOTAL | $33,410. |

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 9 | CCP 9034300 | ENVIROTECH CORPORATION | 6-29-73 |

CNA/insurance

9-10-73 SLS/EA

JOHNSON & HIGGINS

Countersigned by [signature] Authorized Agent

Blank Endorsement
G-31821-B

This endorsem... ...es such insurance as is afforded by the ... of the policy relating to the following designated insurance:

☒ ALL COVERAGE PARTS
☐
☐
☐

IN CONSIDERATION OF AN ADDITIONAL PREMIUM TO BE DETERMINED AT AUDIT IT IS AGREED THAT ITEM #1 OF THE DECLARATIONS, NAMED INSURED, IS EXTENDED TO INCLUDE THE FOLLOWING ENTITIES

EFFECTIVE 9-30-73 ALLEN-SHERMAN-HOFF PUMP CO.
P. O. BOX 635
PADI, PENNSYLVANIA 09301

EFFECTIVE 10-31-73 WARREN STEEL, DIVISION OF ENVIROTECH
BROADHURST STREET
WARREN, PENNSYLVANIA 16365

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| 10 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| ENVIROTECH CORPORATION | AS SHOWN ABOVE |

1-17-74 EA/SE JOHNSON & HIGGINS

Countersigned by ____________
Authorized Agent

Blank Endorsement
G-31821-B

PRODUCER COPY

# AUTOMOBILE CHANGE ENDORSEMENT

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

AUTOMOBILE LIABILITY INSURANCE
AUTOMOBILE MEDICAL PAYMENTS INSURANCE
AUTOMOBILE PHYSICAL DAMAGE INSURANCE
PROTECTION AGAINST UNINSURED MOTORIST INSURANCE

In consideration of the premium for this endorsement indicated below, it is agreed that such insurance as is afforded by the policy shall

1. cease to apply to the following:

| Unit No. | Year of Model and Trade Name | Body Type & Model; Truck Load Capacity; Tank Gallonage or Bus Seating Capacity | (M) Motor No. (S) Serial No. (R) Registration No. |
|---|---|---|---|
| | | | |

2. Apply to the following automobile (or for automobile physical damage insurance, covered automobile) but only with respect to such coverage(s) as are indicated by a specific premium charge below.

| Unit No. | Town and State in Which Automobile Will Be Principally Garaged | Year of Model and Trade Name | Body Type & Model; Truck Load Capacity; Tank Gallonage or Bus Seating Capacity | (M) Motor No. (R) Registration No. (S) Serial No. | Radius of Operations in Miles | Territory Code Liab. | Territory Code Phys. Dam. | Rate Class |
|---|---|---|---|---|---|---|---|---|
| 1 | SAN MATEO CO. | 1974 MERCEDES BENZ | SEDAN | 1N115117-12-007004 | | 91 | 91 | 862269 |
| 2 | " | 1967 MERCEDES BENZ | 220 SEL | 10901512001508 | | 91 | 91 | 859269 |

| Unit No. | Month & Year Purchased | N or U | Rating Sym. or Original Cost New Incl. Equip. | *Amount of Insurance (A.C.V. or Stated Value) | Amount of Collision Deductible | Compre-hensive | Collision† | | Medical Payments | Uninsured Motorists | Bodily Injury | Property Damage |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Complete For Physical Damage Coverage Only | | | | | REVISED ANNUAL PREMIUMS | | | | | | |
| 1 | | | 7-2 | ACV | 250. | 146. | 160. | | 32. | 5. | 146. | 108. |
| 2 | | | 7-6 | ACV | 250. | 99. | 133. | | 36. | 4. | 164. | 122. |

When towing coverage is provided, the limit of liability is $25 each disablement.
*Unless otherwise stated in each entry the Amount of Insurance is "Actual Cash Value."
†The amount of insurance for Collision is always "Actual Cash Value" less the indicated deductible.
Purposes for which the above described units are to be used are "Pleasure and Business" for Private Passenger and "Commercial" for Commercial or Truck type.

Loss payee: Any loss hereunder (except under Bodily Injury Liability, Property Damage Liability, Automobile Medical Payments, or Uninsured Motorist coverage) is payable as interest may appear to the named insured and ______ in accordance with the Loss Payable Clause on the reverse side.

| COVERAGES | RETURN PREMIUMS Unit 1 | Unit 2 | Unit 3 | ADDITIONAL PREMIUMS Unit 1 | Unit 2 | Unit 3 |
|---|---|---|---|---|---|---|
| Bodily Injury Liability | | | | 45. | 50. | |
| Property Damage Liability | | | | 33. | 37. | |
| Automobile Medical Payments | | | | 10. | 11. | |
| Uninsured Motorist | | | | 2. | 1. | |
| Comprehensive | | | | 45. | 30. | |
| Collision | | | | 49. | 41. | |

PRO-RATA .307

TOTAL XX Additional ☐ Return Premium 354.

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* ENDT. NO. | POLICY NO. |
|---|---|
| 11 | CCP 9034300 |

*Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy*

ISSUED TO: ENVIROTECH CORPORATION
EFFECTIVE DATE OF THIS ENDORSEMENT: 2-6-74

CNA/insurance

3-18-74 EA/SE JOHNSON & HIGGINS

Countersigned by ______ Authorized Agent

G-31805-A

ORIGINAL

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

- [x] COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE
- [ ]
- [ ]
- [ ]

IN CONSIDERATION OF THE PREMIUMS CHARGED AS PER AUTO SCHEDULE G-31805-A IT IS AGREED THAT ITEM #1 OF THE DECLARATIONS, THE NAMED INSURED, IS AMENDED TO INCLUDE THE FOLLOWING:

ROBERT L. CHAMBERS
JUNE CHAMBERS (WIFE)
JAMES CHAMBERS (SON)
AND:
ROBERT R. KWONG
JEANNETTE KWONG (WIFE)
JOSEPH KWONG (SON)
KAREN KWONG (DAUGHTER)

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 12 | CCP 9034300 | ENVIROTECH CORPORATION | 2-6-74 |

CNA/insurance

3-B-74 EA/SE JOHNSON & HIGGINS

Countersigned by [signature]
Authorized Agent

Blank Endorsement
G-31821-B

 

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**AUTOMOBILE PHYSICAL DAMAGE INSURANCE (PHD)**

## INDIVIDUAL NAMED INSURED

It is agreed that the insurance for **covered automobiles** of the **private passenger type** applies subject to the following additional provisions:

1. **Additional Definitions**

When used in reference to this insurance (including this and other endorsements forming a part of the policy):

**"farm automobile"** means an automobile of the truck type with a load capacity of fifteen hundred pounds or less not used for business or commercial purposes other than farming;

**"individual named insured"** means the person named in Item 1 of the declarations or in this endorsement and, except with respect to notice of cancellation, includes his spouse if a resident of the same household;

**"insured"** means

(a) with respect to an **owned automobile,**

(i) the **individual named insured,** and

(ii) any person or organization (other than a person or organization employed or otherwise engaged in the business or occupation of selling, repairing, servicing, storing or parking automobiles or as a carrier or other bailee for hire) maintaining, using or having custody of such **owned automobile** with the permission of the **individual named insured** and within the scope of such permission;

(b) with respect to a **non-owned automobile,** the **individual named insured** and any **relative** while using such **non-owned automobile;** provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, and provided further, such operation or use is not in connection with such **insured's** being employed or otherwise engaged in the business or occupation of selling, repairing, servicing, storing or parking automobiles;

**"non-owned automobile"** means an automobile of the **private passenger type** or a **utility trailer** not owned by or furnished for the regular use of either the **individual named insured** or any **relative,** other than a **temporary substitute automobile;**

**"owned automobile"** means (1) an automobile of the **private passenger type,** (2) a **farm automobile,** (3) a **utility automobile,** or (4) a **utility trailer,** which is owned by the **individual named insured** and is either

(a) described in the Schedule; or

(b) if not so described, is newly acquired by the **individual named insured** during the policy period provided, however, that:

(i) it replaces an automobile or trailer so described; or

(ii) as of the date of its delivery the company affords Automobile Physical Damage Insurance to the **individual named insured** with respect to all such **owned automobiles** and is notified during the policy period or within 30 days following such delivery date of his election to make this and no other policy issued by the company applicable to such **automobile or trailer;**

and includes a **temporary substitute automobile;**

**"relative"** means a relative of the **individual named insured** who is a resident of the same household;

**"temporary substitute automobile"** means any **automobile or utility trailer** not owned by the **individual named insured,** while temporarily used with the permission of the owner as a substitute for an **owned automobile** when withdrawn from normal use because of its breakdown, repair, servicing, **loss** or destruction;

**"utility automobile"** means an **automobile,** other than a **farm automobile,** with a load capacity of fifteen hundred pounds or less of the pick-up body, sedan delivery or panel truck type not used for business or commercial purposes;

**"utility trailer"** means a trailer designed for use with an **automobile** of the **private passenger type,** if not being used for business or commercial purposes with other than a **private passenger type, farm** or **utility automobile,** and if not a home, office, store, display or passenger trailer.

2. **Family Automobile Extensions**

If during the policy period the **individual named insured** owns a **covered automobile** which is (1) an **automobile** of the **private passenger type,** (2) a **farm automobile** or (3) a **utility automobile:**

A. The insurance applies with respect to

(1) any **owned automobile;**

(2) any **temporary substitute** automobile or **non-owned automobile** while in the possession or custody of, or being operated by, the **insured;**

and such insurance also applies to each **insured** under this endorsement, subject to the Conditions applicable to the **named insured.**

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE

AUTOMOBILE MEDICAL PAYMENTS INSURANCE

SCHEDULE AUTOMOBILE LIABILITY INSURANCE

## INDIVIDUAL NAMED INSURED

It is agreed that the insurance applies with respect to the individual named in Item 1. of the declarations, subject to the following additional provisions:

1. **Additional Definitions**

When used in reference to such insurance (including this and other endorsements forming a part of the policy):

"farm automobile" means an automobile of the truck type with a load capacity of fifteen hundred pounds or less not used for business or commercial purposes other than farming;

"named insured" includes the spouse of the individual named in Item 1. of the declarations if a resident of the same household, except with respect to notice of cancellation;

"relative" means a relative of the named insured who is a resident of the same household;

"utility automobile" means an automobile, other than a farm automobile, with a load capacity of fifteen hundred pounds or less of the pick-up body, sedan delivery or panel truck type not used for business or commercial purposes.

2. **Liability Coverages**

**A. Use of Non-Owned Automobiles**

The insurance does not apply to bodily injury or property damage arising out of the use of any non-owned automobile in a business of which the named insured (or exclusively a combination of named insureds) is not the sole owner, unless the bodily injury or property damage results from the actual operation or occupancy of the automobile by the named insured or his private chauffeur or domestic servant.

**B. Fellow Employees**

The insurance also applies to the named insured while engaged in the business of his employer with respect to bodily injury to any fellow employee of such named insured injured in the course of his employment.

**C. Family Automobile Extensions**

If the named insured owns during the policy period a private passenger, farm or utility automobile which is maintained or used principally for purposes other than the automobile business:

(1) The insurance also applies to a relative, as insured, while using a private passenger automobile (or trailer designed for use therewith) not owned or furnished for the regular use of any relative; provided his actual operation or (if he is not operating) the other actual use of such automobile is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, and provided further such use is not in any business or occupation of the relative.

(2) The exclusion of liability assumed by the insured under any contract or agreement does not apply to liability assumed with respect to the operation or occupancy by the named insured or a relative of

(a) a private passenger, farm or utility automobile (or a trailer used therewith) not furnished for the regular use of any such person, except while such automobile or trailer is being used as a public or livery conveyance, or

(b) any other automobile except while being maintained or used in any business or occupation.

3. **Automobile Medical Payments Coverage**

A. **Persons Insured — Division 2.** The named insured and any relative shall be an insured under this insurance. If the named insured shall die, any person who was an insured at the time of such death shall continue to be an insured.

**B. Use of Non-Owned Automobiles**

If insurance is afforded under Division 1. with respect to any automobile owned by the named insured, the insurance also applies to any other automobile not owned by the named insured, if the bodily injury results from its operation or occupancy by the named insured or its operation on his behalf by his private chauffeur or domestic servant, subject to paragraph D. below.

**C. Family Automobile Extensions**

(1) If such owned automobile is a private passenger, farm or utility automobile which is maintained or used principally for purposes other than garage operations, the insurance also applies, under Division 1, to any other private passenger, farm or utility automobile or home, office, store, display or passenger trailer which is not owned by, or furnished for the regular use of, or used in the business or occupation of any relative, provided the bodily injury results from the operation or occupancy of such automobile by the relative and such operation or occupancy is with the permission, or reasonably believed to be with the permission, of the owner.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

- [x] ALL COVERAGE PARTS
- [ ]
- [ ]
- [ ]

IT IS AGREED THAT THE ADDRESS OF THE FOLLOWING ENTITY IS AMENDED AS FOLLOWS:

DOHRMAN

3240 SCOTT BLVD.

SANTA CLARA, CALIF. 95050

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| 15 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| ENVIROTECH CORPORATION | 6-27-74 |

7-22-74 EA/LN

JOHNSON & HIGGINS - S.F.

Countersigned by _______ Authorized Agent

Blank Endorsement
G-31821-B

 

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE

AUTOMOBILE MEDICAL PAYMENTS INSURANCE

SCHEDULE AUTOMOBILE LIABILITY INSURANCE

## APPLICATION OF INSURANCE TO OWNER OF HIRED AUTOMOBILE

With respect to the hired automobile described below or designated in the policy as subject to this endorsement, it is agreed that:

(1) The insurance applies as primary insurance.

(2) Subject otherwise to the Persons Insured provision, the insurance covers as an insured the owner, any lessee (of whom the named insured is a sub-lessee) and any agent or employee of such owner or lessee, but only while such automobile is used in the business of the named insured as stated in the declarations, or by or on behalf of the named insured for personal or pleasure purposes, and subparagraph (ii) of the Persons Insured provision is amended accordingly.

**Description of Automobile:**

ALL RENTED OR LEASED VEHICLES

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| 16 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| ENVIROTECH CORPORATION | 5-29-74 |

CNA/*insurance*

9-17-74 EW/SE JOHNSON & HIGGINS S.F.

Countersigned by [signature]
Authorized Agent

 

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE

MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE

OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE

STOREKEEPER'S INSURANCE

SMP LIABILITY INSURANCE

## ADDITIONAL INSURED
### (Premises Leased to the Named Insured)

It is agreed that the "Persons Insured" provision is amended to include as an insured the person or organization designated below, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the named insured, and subject to the following additional exclusions:

The insurance does not apply:

1. to any occurrence which takes place after the named insured ceases to be a tenant in said premises;
2. to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated below.

### SCHEDULE

| Designation of Premises (Part Leased to Named Insured) | Name of Person or Organization (Additional Insured) | Premiums: Bodily Injury Liability | Premiums: Property Damage Liability |
|---|---|---|---|
| ANY PREMISES LEASED TO THE NAMED INSURED | | INCL. | INCL. |

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| 17 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| ENVIROTECH CORPORATION | 5-29-74 |

CNA/insurance

9-17-74 EW/SE JOHNSON & HIGGINS S.F.

Countersigned by [signature] Authorized Agent

Additional Insured (Premises Leased to the Named Insured)
G-36037-A ISO No. G109

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

- ☒ ALL COVERAGE PARTS
- ☐
- ☐
- ☐

IT IS AGREED THAT ENVIROTECH SYSTEM'S, INC. IS AMENDED AS FOLLOWS:

ENVIROTECH SYSTEMS, INC.
ONE DAVIS DRIVE
BELMONT, CALIFORNIA

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| 18 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| ENVIROTECH CORPORATION | 9-10-74 |

9-17-74 EW/SE JOHNSON & HIGGINS S.F.

CNA/insurance

Countersigned by [signature]
Authorized Agent

Blank Endorsement
G-31821-B

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:
☐ COMPREHENSIVE GENERAL LIABILITY INSURANCE
☐ COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE
☐ AUTOMOBILE PHYSICAL DAMAGE INSURANCE
☒ SPECIAL COMPREHENSIVE LIABILITY INSURANCE

PREMIUM ADJUSTMENT: ☐ NONE ☐ WAIVED OR INCLUDED IN POLICY PREMIUM ☐ ADDITIONAL $ ______ ☐ RETURN $ ______
Payable: ☐ SEE BELOW OR— Advance $ ______ Revised Installment
First Installment $ ______ $ ______
Second Installment $ ______ $ ______

IT IS AGREED THAT THE "PERSONS INSURED" PROVISION IS AMENDED TO INCLUDE ANY PERSON OR ORGANIZATION FOR WHOM THE NAMED INSURED HAS SPECIFICALLY AGREED BY WHOLLY WRITTEN CONTRACT TO PROCURE BODILY INJURY, PROPERTY DAMAGE AND PERSONAL INJURY LIABILITY INSURANCE PROVIDED THAT:

A. THIS INSURANCE APPLIES ONLY FOR SUCH COVERAGE WHICH THE NAMED INSURED HAS AGREED TO PROVIDE BY WHOLLY WRITTEN CONTRACT BUT IN NO EVENT SHALL THE COVERAGE EXCEED THE COVERAGE PROVIDED BY THE POLICY;

B. THE AMOUNT OF INSURANCE IS LIMITED TO THAT REQUIRED BY SUCH WHOLLY WRITTEN CONTRACT AND IN NO EVENT SHALL THE LIMITS OF LIABILITY EXCEED THE LIMITS OF LIABILITY PROVIDED BY THE POLICY;

C. THIS INSURANCE APPLIES ONLY WITH RESPECT TO LIABILITY ARISING OUT OF OPERATIONS, ACTIVITIES OR BUSINESS CONDUCTED BY OR ON BEHALF OF THE NAMED INSURED.

D. THIS INSURANCE DOES NOT APPLY TO:

1. LIABILITY ARISING FROM OCCURRENCES WHICH TAKE PLACE BEFORE ANY SUCH WHOLLY WRITTEN CONTRACT IS ENTERED INTO BY THE

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| PAGE 1 19 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| ENVIROTECH CORPORATION | 5-29-74 |
| 1-27-75 EW/SE | JOHNSON & HIGGINS S.F. |

Countersigned by ______ Authorized Agent

CNA/insurance

BLANK ENDORSEMENT

This endorsement modifies such in... is afforded by the provisions of the policy rela... the following designated insurance:

☐ COMPREHENSIVE GENERAL LIABILITY INSURANCE
☐ COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE
☐ AUTOMOBILE PHYSICAL DAMAGE INSURANCE
☒ SPECIAL COMPREHENSIVE LIABILITY INSURANCE

PREMIUM ADJUSTMENT: ☐ NONE ☐ WAIVED OR INCLUDED IN POLICY PREMIUM ☐ ADDITIONAL $ ______ ☐ RETURN $ ______

Payable: ☐ SEE BELOW OR— Advance $ ______ Revised Installment

First Installment $ ______ $ ______

Second Installment $ ______ $ ______

NAMED INSURED, OR

2. ANY CONTRACT WITH AN EMPLOYEE, ASSOCIATION OF EMPLOYEES OR LABOR UNION, OR

3. ANY CONTRACT WITH A RAILROAD COMPANY, OR

4. IF THE INSURED IS AN ARCHITECT, ENGINEER OR SURVEYOR, TO BODILY INJURY OR PROPERTY DAMAGE ARISING OUT OF PROFESSIONAL SERVICES PERFORMED BY OR FOR SUCH INSURED OR INDEMNITEE INCLUDING:

   A. THE PREPARATION OR APPROVAL OF MAPS, PLANS, OPINIONS, REPORTS, SURVEYS, DESIGNS OR SPECIFICATIONS AND

   B. SUPERVISORY, INSPECTION OR ENGINEERING SERVICES

5. LIABILITY ARISING OUT OF THE OWNERSHIP, MAINTENANCE OR USE OF ANY AUTOMOBILE OPERATED BY SUCH INSURED, OR

6. LIABILITY OF ANY SUB-CONTRACTOR OF THE NAMED INSURED.

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| PAGE 2 19 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| ENVIROTECH CORPORATION | 5-29-74 |

1-27-75 EW/SE JOHNSON & HIGGINS S.F. Countersigned by [signature] Authorized Agent

BLANK ENDORSEMENT

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

☒ SPECIAL COMPREHENSIVE LIABILITY INSURANCE
☐
☐
☐

NAMED INSURED, OR

2. ANY CONTRACT WITH AN EMPLOYEE, ASSOCIATION OF EMPLOYEES OR LABOR UNION, OR

3. ANY CONTRACT WITH A RAILROAD COMPANY, OR

4. ANY CONTRACT WITH ANY PERSON OR ORGANIZATION WHOSE PROFESSION, BUSINESS OR OCCUPATION IS THAT OF AN ARCHITECT, SURVEYOR OR ENGINEER WITH RESPECT TO LIABILITY ARISING OUT OF FAULTY MAPS, DRAWINGS, OPINIONS, REPORTS, SURVEYS, CHANGE ORDERS, DESIGNS OR SPECIFICATIONS, OR

5. LIABILITY ARISING OUT OF THE OWNERSHIP, MAINTENANCE OR USE OF ANY AUTOMOBILE OPERATED BY SUCH INSURED, OR

6. LIABILITY OF ANY SUB-CONTRACTOR OF THE NAMED INSURED.

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| PAGE 2 19 | CCP 9034308 | ENVIROTECH CORPORATION | 5-29-74 |

CNA/insurance 9-17-74 EW/SE JOHNSON & HIGGINS S.F.

Blank Endorsement
DG-31821-A

Countersigned by ______________________
Authorized Agent

BRANCH OFFICE COPY

This endorsement [illegible]difies such insurance as is afforded by the pr[illegible]ons of the policy relating to the following designated insurance:

- [X] ALL COVERAGE PARTS
- [ ]
- [ ]
- [ ]

ANNIVERSARY ENDORSEMENT

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF ~~$148,284.~~ $137,480

IT IS AGREED THAT THE POLICY IS EXTENDED FOR THE FOLLOWING PERIOD

MAY 29, 1974 TO MAY 29, 1975

IT IS FURTHER AGREED THAT THE PREMIUM AS SET FORTH ABOVE IS PAYABLE AS FOLLOWS:

| DATE DUE | AMOUNT DUE |
|---|---|
| ~~11-1-74~~ 5-29-74 | ~~74,142.~~ $65,590 |
| ~~to 12-1-74~~ | ~~12,357.~~ $14,398 |
| 1-1-75 | ~~12,357.~~ 14,398 |
| 2-1-75 | ~~12,357.~~ 14,398 |
| 3-1-75 | ~~12,357.~~ 14,398 |
| 4-1-75 | ~~12,357.~~ 14,398 |
| 5-1-75 | ~~12,357.~~ |
| TOTAL | ~~$148,284.~~ $137,480 |

$86,499

$20,909 RH

250 SAN FRANCISCO BRANCH 0224 OCT 25 1974

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 20 | CCP 9834300 | ENVIROTECH CORPORATION | 5-29-74 |

CNA/insurance

10-24-74 EW/SE JOHNSON & HIGGINS S.F.

Blank Endorsement
DG-31821-A

Countersigned by ______________________
Authorized Agent

BRANCH OFFICE COPY

This endorsement [illegible]ifies such insurance as is afforded by the pr[illegible]ons of the policy relating to the following designated insurance:

- [X] ALL COVERAGE PARTS
- [ ]
- [ ]
- [ ]

## ANNIVERSARY ENDORSEMENT

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $137,480.

IT IS AGREED THAT THE POLICY IS EXTENDED FOR THE FOLLOWING PERIOD: 5-29-74 TO 5-29-75

IT IS FURTHER AGREED THAT THE PREMIUM AS SET FORTH ABOVE IS PAYABLE AS FOLLOWS:

| DATE DUE | AMOUNT DUE |
|---|---|
| 6-1-74 | 9,370. |
| 7-1-74 | 9,370. |
| 8-1-74 | 9,370. |
| 9-1-74 | 9,370. |
| 10-1-74 | 9,370. |
| 11-1-74 | 9,370. |
| 12-1-74 | 9,370. |
| 1-1-75 | 14,378. |
| 2-1-75 | 14,378. |
| 3-1-75 | 14,378. |

SAN FRANCISCO BRANCH
250 1205 DEC 30 1974
H.O. cy Transmittal w/o a memo

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| REVISED 20 | CCP 9034300 | ENVIROTECH CORPORATION | 5-29-74 |

PAGE 1

CNA/insurance

12-27-74 EW/SE JOHNSON & HIGGINS S.F.

Blank Endorsement
DG-31821-A

Countersigned by ______________________
Authorized Agent

BRANCH OFFICE COPY

This endorsement [illegible]difies such insurance as is afforded by the p[illegible]ions of the policy, relating to the following designated insurance:

☒ ALL COVERAGE PARTS
☐
☐
☐

ANNIVERSARY ENDORSEMENT (CONT'D)

| DATE DUE | AMOUNT DUE |
|---|---|
| 4-1-75 | 14,378. |
| 5-1-75 | 14,378. |
| | $137,480. |

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| REVISED 20 | CCP 9034300 | ENVIROTECH CORPORATION | 5-29-74 |

PAGE 2

CNA/insurance

12-27-74 EW/SE JOHNSON & HIGGINS S.F.

Blank Endorsement
DG-31821-A

Countersigned by ____________________
Authorized Agent

BRANCH OFFICE COPY

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

- [x] ALL COVERAGE PARTS
- [ ]
- [ ]
- [ ]

IN CONSIDERATION OF AN ADDITIONAL PREMIUM TO BE DETERMINED AT AUDIT, IT IS AGREED THAT THE FOLLOWING IS ADDED AS A NAMED INSURED UNDER ITEM #1 OF THE DECLARATIONS:

ERCO ENVIROTECH - A JOINT VENTURE

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 21 | CCP 9034300 | ENVIROTECH CORPORATION | 10-30-74 |

CNA/insurance 12-19-74 EW/CW

JOHNSON & HIGGINS - S.F.

Countersigned by ______ Authorized Agent

Blank Endorsement
G-31821-B

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

- [X] ALL COVERAGE PART
- [ ]
- [ ]
- [ ]

IN CONSIDERATION OF A PREMIUM ADJUSTMENT TO BE MADE AT AUDIT IT IS AGREED THAT THE FOLLOWING ENTITY IS ADDED AS A NAMED INSURED:

T. SHRIVER & CO.
842 HAMILTON
HARUSON, NEW JERSEY

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| 22 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| ENVIROTECH CORPORATION | 10-1-74 |

JOHNSON & HIGGINS - S.F.

Countersigned by _______ Authorized Agent

CNA/insurance

1-7-75 EW/bm

Blank Endorsement

G-31821-B

This endorsement modifies such ins[illegible] is afforded by the provisions of the policy rela[illegible] [illegible]e following designated insurance:

XX COMPREHENSIVE GENERAL LIABILITY INSURANCE ☐ AUTOMOBILE PHYSICAL DAMAGE INSURANCE

XX COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE ☐

PREMIUM ADJUSTMENT: XX NONE ☐ WAIVED OR INCLUDED IN POLICY PREMIUM ☐ ADDITIONAL $ ______ ☐ RETURN $ ______

Payable: ☐ SEE BELOW OR— Advance $ ______ Revised Installment

First Installment $ ______ $ ______

Second Installment $ ______ $ ______

IT IS AGREED THAT THE FOLLOWING CHANGE OF ENTITY NAME APPLIES:

DELETE ENVIROTECH SYSTEMS, INC.

ADD EIMCO BSP SERVICE COMPANY

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| 23 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| ENVIROTECH CORPORATION | 1-2-75 |

1-21-75 ew/ms JOHNSON & HIGGINS-S.F.

Countersigned by

Authorized Agent

CNA/insurance

BLANK ENDORSEMENT

This endorsement modifies such ins... afforded by the provisions of the policy relat... following designated insurance:

☐ COMPREHENSIVE GENERAL LIABILITY INSURANCE ☐ AUTOMOBILE PHYSICAL DAMAGE INSURANCE
☐ COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE ☒ ALL COVERAGE PARTS

PREMIUM ADJUSTMENT: ☐ NONE ☐ WAIVED OR INCLUDED IN POLICY PREMIUM ☐ ADDITIONAL $ ______ ☐ RETURN $ ______

Payable: ☐ SEE BELOW OR— Advance $ ______

| | | Revised Installment |
|---|---|---|
| First Installment | $ | $ |
| Second Installment | $ | $ |

IT IS AGREED THAT THE FOLLOWING IS INCLUDED IN THE POLICY SUBJECT TO THE RESTRICTIONS SET FORTH BELOW: KENTUCKY UTILITIES COMPANY
120 SOUTH LIMESTONE ST.
LEXINGTON, KENTUCKY 40507

CONTRACTOR AGREES TO DEFEND, INDEMNIFY AND HOLD HARMLESS PURCHASER AND THE CONSULTING ENGINEERS FROM ANY CLAIM, DEMAND, SUIT, LOSS, COST OR EXPENSES OR ANY DAMAGE WHICH MAY BE ASSERTED CLAIMED OR RECOVERED AGAINST OR FROM PURCHASER AND THE CONSULTING ENGINEERS BY REASON OF ANY DAMAGE TO PROPERTY OR INJURY, INCLUDING DEATH, SUSTAINED BY ANY PERSON OR PERSONS WHOSOEVER AND WHICH DAMAGE, INJURY OR DEATH ARISES OUT OF OR IS INCIDENT TO, OR IN ANY WAY CONNECTED WITH THE PERFORMANCE OF THIS CONTRACT EVEN THOUGH SUCH CLAIM, DEMAND, LOSS, COST OR EXPENSE IS CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF PURCHASER OR THE CONSULTING ENGINEERS OR CONTRACTOR OR ANY SUBCONTRACTOR OF CONTRACTOR OR BY THE THIRD PARTY OR BY THE AGENTS, SERVANTS OR EMPLOYEES OF ANY OF THEM.

IT IS UNDERSTOOD AND AGREED THAT THE INDEMNIFICATION OBLIGATIONS OF THE CONTRACTOR UNDER THE PROVISIONS OF THIS PARAGRAPH SHALL NOT EXTEND TO THE LIABILITY OF THE ARCHITECT AND/OR THE ENGINEER, THEIR AGENTS, EMPLOYEES, LICENSEES, LESSEES OR TENANTS ARISING OUT OF THE PREPARATION OR APPROVAL OF MAPS, DRAWINGS, OPINIONS, REPORTS, SURVEYS, CHANGE ORDERS, DESIGNS OR SPECIFICATIONS.

IT IS AGREED THAT THE KENTUCKY UTILITIES COMPANY AND SARGENT & LUNDY ARE INCLUDED AS INSURED.

IT IS FURTHER AGREED THAT COVERAGE AFFORDED BY THIS ENDORSEMENT SHALL NOT APPLY EXCEPT AS RESPECTS OPERATIONS OF BUELL ENVIROTECH REQUIRED BY CONTRACT G 209 75M - 21506/SO 8138.

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| 24 | CCP 9034300 |

*Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy*

| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
|---|---|
| ENVIROTECH CORPORATION | 1-2-74 |

1-27-75 FA/SE JOHNSON & HIGGINS S.F.

Countersigned by ______ Authorized Agent

CNA/insurance

BLANK ENDORSEMENT

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

- [X] COMPREHENSIVE GENERAL LIABILITY INSURANCE
- [ ] AUTOMOBILE PHYSICAL DAMAGE INSURANCE
- [ ] COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE
- [ ]

PREMIUM ADJUSTMENT: [X] NONE [ ] WAIVED OR INCLUDED IN POLICY PREMIUM [ ] ADDITIONAL $ ______ [ ] RETURN $ ______

Payable: [ ] SEE BELOW OR— Advance $ ______ Revised Installment

First Installment $ ______ $ ______

Second Installment $ ______ $ ______

IT IS AGREED THAT THE FOLLOWING IS DELETED:

TAYLOR STYLES, DIVISION OF WEMCO

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| 25 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| ENVIROTECH CORPORATION | 11-1-74 |

JOHNSON & HIGGINS - S.F.

CNA/insurance

Countersigned by ______ Authorized Agent

BLANK ENDORSEMENT

 

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE

AUTOMOBILE MEDICAL PAYMENTS INSURANCE

SCHEDULE AUTOMOBILE LIABILITY INSURANCE

## USE OF OTHER AUTOMOBILES COVERAGE — BROAD FORM

It is agreed that such insurance as is afforded by the policy, under the bodily injury liability and property damage liability coverages and division 1 of the Automobile Medical Payments coverage, with respect to any owned automobile covered under the policy also applies with respect to any other automobile, subject to the following additional provisions:

1. **Persons Insured**

   Each of the following is an insured under the bodily injury liability and property damage liability insurance afforded under this endorsement to the extent set forth herein:

   (a) each individual named below and, while a resident of the same household, the spouse of such individual, and

   (b) any other person or organization, not owning or hiring the automobile, but only with respect to his or its liability because of acts or omissions of an insured under (a) above.

2. **Exclusions**

   This insurance does not apply:

   (a) to any insured while engaged in the business of his employer with respect to bodily injury to a fellow employee of such insured injured in the course of his employment;

   (b) to any insured while employed in or otherwise engaged in duties in connection with an automobile business;

   (c) if the individual named below is an employee, to the employer of such individual;

   (d) if the individual named below is a partner, to the partnership of which such individual is a member;

   (e) to any automobile owned by such named individual, his spouse or any resident of the same household other than a private chauffeur or domestic servant of such named individual or spouse;

   (f) to any automobile while used in the business or occupation of the named individual or spouse except an automobile operated or occupied by such named insured, spouse or private chauffeur or domestic servant;

   (g) under division 1 of Automobile Medical Payments insurance, to any automobile while being used by the insured as a public or livery conveyance.

3. **Excess Insurance** This insurance shall be excess insurance over any other valid and collectible insurance available to the insured.

4. The insurance afforded because of the naming herein of any individual is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges for such person.

| Name of Individual: | Premium: Bodily Injury Liability | Premium: Property Damage Liability | Premium: Automobile Medical Payments |
|---|---|---|---|
| ROBERT L. KWONG | | | |
| ROBERT L. CHAMBERS | | | |
| | | Total Premium $ | INCLUDED |

This endorsement forms a part of and is for attachment to the following described policy issued by the CONTINENTAL NATIONAL AMERICAN GROUP company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| 1-1 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| | |

CNA CONTINENTAL NATIONAL AMERICAN GROUP

Countersigned by [signature] Licensed Resident Agent

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE

AUTOMOBILE MEDICAL PAYMENTS INSURANCE

SCHEDULE AUTOMOBILE LIABILITY INSURANCE

## USE OF OTHER AUTOMOBILES COVERAGE — BROAD FORM

It is agreed that such insurance as is afforded by the policy, under the **bodily injury** liability and **property damage** liability coverages and division 1 of the Automobile Medical Payments coverage, with respect to any **owned automobile** covered under the policy also applies with respect to any other **automobile**, subject to the following additional provisions:

1. **Persons Insured**

   Each of the following is an **insured** under the **bodily injury** liability and **property damage** liability insurance afforded under this endorsement to the extent set forth herein:

   (a) each individual named below and, while a resident of the same household, the spouse of such individual, and

   (b) any other person or organization, not owning or hiring the **automobile**, but only with respect to his or its liability because of acts or omissions of an **insured** under (a) above.

2. **Exclusions**

   This insurance does not apply:

   (a) to any **insured** while engaged in the business of his employer with respect to **bodily injury** to a fellow employee of such **insured** injured in the course of his employment;

   (b) to any **insured** while employed in or otherwise engaged in duties in connection with an **automobile business**;

   (c) if the individual named below is an employee, to the employer of such individual;

   (d) if the individual named below is a partner, to the partnership of which such individual is a member;

   (e) to any **automobile** owned by such named individual, his spouse or any resident of the same household other than a private chauffeur or domestic servant of such named individual or spouse;

   (f) to any **automobile** while used in the business or occupation of the named individual or spouse except an **automobile** operated or occupied by such named **insured**, spouse or private chauffeur or domestic servant;

   (g) under division 1 of Automobile Medical Payments insurance, to any **automobile** while being used by the **insured** as a public or livery conveyance.

3. **Excess Insurance** This insurance shall be excess insurance over any other valid and collectible insurance available to the **insured**.

4. The insurance afforded because of the naming herein of any individual is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges for such person.

| Name of Individual: | Premium | | |
|---|---|---|---|
| | Bodily Injury Liability | Property Damage Liability | Automobile Medical Payments |
| ROBERT L. KWONG | | | |
| ROBERT L. CHAMBERS | | | |
| | | Total Premium $ | INCLUDED |

This endorsement forms a part of and is for attachment to the following described policy issued by the CONTINENTAL NATIONAL AMERICAN GROUP company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| 1-1 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| | |

CNA CONTINENTAL NATIONAL AMERICAN GROUP

Countersigned by [signature] Licensed Resident Agent



This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE

MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE

OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE

STOREKEEPER'S INSURANCE

SMP LIABILITY INSURANCE

## ADDITIONAL INSURED
## (Premises Leased to the Named Insured)

It is agreed that the "Persons Insured" provision is amended to include as an insured the person or organization designated below, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the named Insured, and subject to the following additional exclusions:

The insurance does not apply:

1. to any occurrence which takes place after the named insured ceases to be a tenant in said premises;
2. to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated below.

## SCHEDULE

| Designation of Premises (Part Leased to Named Insured) | Name of Person or Organization (Additional Insured) | Premiums: Bodily Injury Liability | Premiums: Property Damage Liability |
|---|---|---|---|
| 100 VALLEY DRIVE BRISBANE, CALIF. | CONNECTICUT GENERAL MORTGAGE & REALTY INVESTMENTS | INCLUDED | |

This endorsement forms a part of and is for attachment to the following described policy issued by the CONTINENTAL NATIONAL AMERICAN GROUP company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| 1-2 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| | |

CNA insurance

Countersigned by [signature]

Licensed Resident Agent

 

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE

AUTOMOBILE MEDICAL PAYMENTS INSURANCE

SCHEDULE AUTOMOBILE LIABILITY INSURANCE

## APPLICATION OF INSURANCE TO OWNER OF HIRED AUTOMOBILE

With respect to the hired automobile described below or designated in the policy as subject to this endorsement, it is agreed that:

(1) The insurance applies as primary insurance.

(2) Subject otherwise to the Persons Insured provision, the insurance covers as an insured the owner, any lessee (of whom the named insured is a sub-lessee) and any agent or employee of such owner or lessee, but only while such automobile is used in the business of the named insured as stated in the declarations, or by or on behalf of the named insured for personal or pleasure purposes, and subparagraph (ii) of the Persons Insured provision is amended accordingly.

**Description of Automobile:**

(A) 1969 LINCOLN MARK III #9Y89A848687

(B) 1967 MERCEDES BENZ 220 SEL S#10901512001508

(C) ANY VEHICLE LEASED OR HIRED TO THE NAMED INSURED BY:

ITT AVIS, INC. - AVIS RENT-A-CAR
SYSTEM, INC.
GARDEN CITY, NEW YORK.

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. REVISED | POLICY NO. |
| 1-3 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| ENVIROTECH CORPORATION | 5-29-72 |

CNA/insurance

9-5-72 CS

JOHNSON & HIGGINS

Countersigned by [signature]
Authorized Agent

 

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE

AUTOMOBILE MEDICAL PAYMENTS INSURANCE

SCHEDULE AUTOMOBILE LIABILITY INSURANCE

## APPLICATION OF INSURANCE TO OWNER OF HIRED AUTOMOBILE

With respect to the hired automobile described below or designated in the policy as subject to this endorsement, it is agreed that:

(1) The insurance applies as primary insurance.

(2) Subject otherwise to the Persons Insured provision, the insurance covers as an insured the owner, any lessee (of whom the named insured is a sub-lessee) and any agent or employee of such owner or lessee, but only while such automobile is used in the business of the named insured as stated in the declarations, or by or on behalf of the named insured for personal or pleasure purposes, and subparagraph (ii) of the Persons Insured provision is amended accordingly.

Description of Automobile:

(A) 1969 LINCOLN MARK III #9Y89A848687

(B) 1963 MERCEDES-BENZ 220 SE #B039805

(C) ANY VEHICLE LEASED OR HIRED TO THE NAMED INSURED BY

ITT AVIS, INC. - AVIS RENT-A-CAR
SYSTEM, INC.
GARDEN CITY, NEW YORK

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| 1-3 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| | |

CNA/*insurance*

Countersigned by [signature]
Authorized Agent

 

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
COMPLETED OPERATIONS AND PRODUCTS LIABILITY INSURANCE
CONTRACTUAL LIABILITY INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS' AND CONTRACTORS' PROTECTIVE LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY INSURANCE— NEW YORK DEPARTMENT OF PUBLIC WORKS
STOREKEEPER'S INSURANCE

## EXCLUSION

### (Contamination or Pollution)

It is agreed that the insurance does not apply to **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| 1-4 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| | |

CNA/*insurance*

G32927-A(IRB-G335)

Countersigned by [signature]
Authorized Agent

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

- ☐ COMPREHENSIVE GENERAL LIABILITY INSURANCE
- ☐ COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE
- ☒ SPECIAL COMPREHENSIVE LIABILITY INSURANCE
- ☐

RETROSPECTIVE PREMIUM ENDORSEMENT -- PLAN D

SHORT FORM

IT IS AGREED THAT THE PREMIUM FOR THE POLICY SHALL BE COMPUTED IN ACCORDANCE WITH THE PROVISIONS OF THE RETROSPECTIVE PREMIUM ENDORSEMENT - PLAN D FORMING A PART OF POLICY WC 8701200. (includes 2.21 in retro)

3 copies to region 1-8-73

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| R-1 | CCP 9034300 | ENVIROTECH CORPORATION | 5-29-72 |

CNA/insurance

1-15-73 SE JOHNSON & HIGGINS

Countersigned by ____________________
Authorized Agent

Blank Endorsement
DG-31821-A

BRANCH OFFICE COPY

A computation of the adjusted premium, applicable to the first two annual periods, shall be made six months after the expiration of the second annual period, or as soon thereafter as practicable, based upon the standard premium and incurred losses for such periods, using incurred losses valued as of the date of computation, provided that this paragraph does not apply if the Plan is terminated during the first twelve month period of the Plan.

A computation of the adjusted premium for the three year period shall be made six months after the expiration of the third annual period, or as soon thereafter as practicable, based upon the standard premium and incurred losses for such periods, using incurred losses valued as of the date of computation, provided that this paragraph does not apply if the Plan is terminated during the first or second twelve month period of the Plan.

Another computation of the adjusted premium shall be made as soon as practicable after eighteen months following the termination of the policies, using incurred losses valued as of the date of computation. Such computation of the adjusted premium for the period the policies have been in force shall be final if all claims have been closed or it is apparent that the adjusted premium will exceed the maximum adjusted premium. If such computation is not final, additional computations shall be made at twelve month intervals until such time as all claims have been closed or until the Company and the insured agree that a computation shall be final. If, after the final computation has been made, the cost of the incurred losses changes, the Company may make such additional computations as it deems necessary to accurately determine the adjusted premium.

If the Plan is terminated during one of the twelve month periods of the three-year period that part of the annual period prior to the date of cancellation shall be considered, for the purpose of making adjusted premium computations, the same as an annual period and the date of such cancellation shall be considered the expiration date of such annual period.

If the named insured disposes of his entire interest in the operations covered by the policies, or makes an assignment for the benefit of creditors, or is in a legal proceeding, reorganized or declared bankrupt or insolvent, and if the adjusted premium as of the date of such change of status is greater than the standard premium for insurance to such date, the Company may compute the adjusted premium as of such date, as soon as practicable thereafter.

After each computation, if the premium thus computed exceeds the premium paid for insurance subject to the Plan, the named insured shall pay the difference to the Company; if less, the Company shall return the difference to the named insured.

5. **Cancellation or Non-Renewal.**

The cancellation or non-renewal by the named insured, prior to the end of the three-year period, of any policy designated in Table I shall terminate the Plan as of the date of such policy cancellation or non-renewal. In such event, the premium for insurance subject to the Plan for the period the policies were in force shall be computed in accordance with the provisions of this endorsement, provided:

(a) The standard premium shall be computed as the sum of (1) the audited standard premium for all completed annual periods and (2) the short rate standard premium for the incompleted annual period in which cancellation is effective; the standard premium so computed shall be used to determine the fixed charge and excess loss premium; and the standard premium so computed shall be the minimum adjusted premium.

(b) The standard premium computed as the sum of (1) the audited standard premium to the date of cancellation or non-renewal and (2) the pro rata extension of such audited standard premium to the end of the three-year period, shall be used to determine the maximum adjusted premium.

In the event of cancellation or non-renewal by the Company, prior to the end of the three-year period, of any policy designated in Table I, the Company may terminate the Plan as of the date of such policy cancellation or non-renewal. In the event of such termination, the premium for insurance subject to the Plan for the period the policies were in force shall be computed in accordance with the provisions of this endorsement, provided:

(c) The standard premium shall be computed on a pro rata basis.

(d) If the termination is because of non-payment of premium by the named insured, the standard premium computed as the sum of (1) the audited standard premium to the date of cancellation or non-renewal and (2) such audited standard premium extended pro rata to the end of the three-year period, shall be used to determine the maximum adjusted premium.

6. **Table I and Table II.**

Table I and Table II referred to in this endorsement are shown on the endorsement entitled "Schedule for Automatic Premium Adjustment Rating Plan Endorsement" which endorsement shall complete and form a part of this endorsement.

copies orig 1-18-73

This endorsement forms a part of and is for attachment to the following described policy issued by the CONTINENTAL NATIONAL AMERICAN GROUP company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| SR-1 | CCP 9034300 | ENVIROTECH CORPORATION | 5-29-72 |

CNA CONTINENTAL NATIONAL AMERICAN GROUP 1-15-73 SE JOHNSON & HIGGINS

Countersigned by____________________
Licensed Resident Agent

 

# AUTOMATIC PREMIUM ADJUSTMENT RATING PLAN ENDORSEMENT
## THREE YEAR

It is agreed that this endorsement applies to the policies designated in Table I, and any renewals thereof affording insurance with respect to the three year period commencing with the effective date of this policy, subject to the following provisions:

1. **Final Premium.** The final premium for such policies is the sum of:

   (a) the premium for the insurance not subject to the Automatic Premium Adjustment Rating Plan (hereinafter called the "Plan"), as specified in Table I, computed in accordance with the provisions of such policies, other than this endorsement, and

   (b) the premium for the insurance subject to the Plan, as specified in Table I, (hereinafter referred to as the "adjusted premium").

2. **Adjusted Premium.** The adjusted premium shall be the sum of:

   (a) the fixed charge,

   (b) the excess loss premiums, and

   (c) the modified losses,

   multiplied by the tax multiplier, if any. The adjusted premium shall be subject to the minimum adjusted premium and to the maximum adjusted premium.

3. **Definition of Terms Used in the Computation of the Adjusted Premium.**

   (a) **"Standard premium"** means the premium for the insurance subject to the Plan computed in accordance with the provisions of the policies, other than this endorsement and exclusive of the application of any premium discount endorsement.

   (b) **"Fixed charge"** means the amount obtained by applying to the standard premium the fixed charge percentage stated in Table II.

   (c) **"Excess loss premium"** means (1) the amount obtained by applying to the standard premium for general liability and automobile liability insurance, the Excess Loss Premium Factor (Liability) stated in Table I times the applicable Loss Conversion Factor, or (2) the amount obtained by applying to the standard premium, the Excess Loss Premium Factor (combined) stated in Table I times the applicable Loss Conversion Factor.

   (d) **"Incurred losses"** means the sum of:

   (1) all losses, including medical, actually paid,

   (2) reserves for unpaid losses as estimated by the company,

   (3) premiums on bonds paid for by the Company in accordance with the provisions of the policies,

   (4) interest accruing after entry of a judgment against the insured,

   (5) allocated loss adjustment expenses, and

   (6) expenses incurred in seeking recovery against a third party

   under the insurance subject to the Plan, provided items (3), (4) and (5) above shall not apply as respects automobile physical damage insurance.

   (e) **"Allocated loss adjustment expense"** means that expense which can be allocated to the individual claims. For the purposes of this endorsement, it is defined as the actual payments for legal expenses, excluding the cost of investigation and adjustment of claims by salaried employees and fee adjusters, but including attorney's fees, court costs, expense for expert testimony, examinations, x-rays, autopsy or medical expenses of any kind not incurred for the benefit of the claimants or any other expenses incurred under the policies listed in Table I other thân payment of indemnity or medical treatment, provided that only those items of expense which can be directly allocated to a specific claim involving litigation or possible litigation when necessary to determine the Company's liability shall be included.

   (f) **"Combined liability loss limitation,"** if stated in Table I, means the overall limit of incurred losses to be included in computing the adjusted premium for general liability and automobile liability insurance afforded under any policy designated in Table I as subject to the Plan, arising out of any one accident or occurrence.

   (g) **"Automobile physical damage loss limitation,"** if stated in Table I, means the limit of incurred losses to be included in computing the adjusted premium for the automobile physical damage insurance afforded under any policy designated in Table I as subject to the Plan, arising out of any one occurrence.

   (h) **"Combined liability and automobile physical damage loss limitation,"** if stated in Table I, means the limit of incurred losses to be included in computing the adjusted premium under all policies designated in Table I as subject to the Plan, arising out of any one accident or occurrence.

   (i) **"Loss conversion factor"** means the factor stated in Table I.

   (j) **"Modified losses"** means the incurred losses multiplied by the Loss Conversion Factor.

   (k) **"Tax multiplier"** means the applicable factor stated in Table I.

   (l) **"Minimum adjusted premium"** is the amount obtained by the application of the minimum premium percentage stated in Table II to the standard premium.

   (m) **"Maximum adjusted premium"** is the amount obtained by the application of the maximum premium percentage stated in Table II to the standard premium.

4. **Payments and Computations of Premium for Insurance Subject to the Plan.**

   (a) **Standard Premium.** The named insured shall pay the standard premium to the Company in accordance with the provisions of the policies, other than this endorsement, specifying the manner of premium payment.

   (b) **Adjusted Premium.** Six months after the expiration of the first annual period, or as soon thereafter as practicable, the Company shall make a computation of the ad[illegible]sted premium, based upon the standard pr[illegible]m and incurred losses of such period, using the incurred losses valu[illegible] [illegible]f the date of computation.

 

The incurred losses to be included in computing the premium for the insurance subject to the Plan shall not include that portion of the losses actually paid and the reserves for unpaid losses which is in excess of the limits of liability stated above, but that part of the incurred losses consisting of premium on bonds, interest accruing after entry of judgment, allocated loss adjustment expenses and expenses incurred in seeking recovery against a third party shall not be subject to such limits. If the period of the Plan exceeds one year, aggregate limits of liability stated above apply separately to each annual period.

4. Combined Liability Loss Limitation is $ NOT APPLICABLE

5. Automobile Physical Damage Loss Limitation is $ 25,000. The premium for automobile physical damage insurance afforded under policies designated in paragraph 1 above for insurance in excess of the amount of the automobile physical damage loss limitation shall not be subject to the Plan.

6. Combined liability and automobile physical damage loss limitation is $ 25,000.

7. Loss Conversion Factor is 1.12.

8. Excess Loss Premium Factor (Liability) is NOT APPLICABLE

9. Excess Loss Premium Factor (combined) is INCLUDED IN FIXED CHARGE

10. Tax multiplier is 1.038.

**TABLE II**

**Percentages to Determine**

**Fixed Charge, Minimum, and Maximum Premiums**

The fixed charge, the minimum premium, and the maximum premium for insurance subject to the Plan are percentages of the standard premium for such insurance. Such percentages are computed initially upon an estimate of the standard premium and finally upon the earned standard premium for such insurance. If more than one figure is shown on the standard premium line below and the standard premium lies between any two of the figures on the "Standard Premium" line, the percentages applicable shall be obtained by linear interpolation to the nearest one-tenth of 1%.

**Percentages of Standard Premium**

| | |
|---|---|
| Standard Premium | 64,458 |
| Minimum Premium | 50% |
| Maximum Premium | 140% |
| Fixed Charge | 20.0% |

This endorsement forms a part of and is for attachment to the following described policy issued by the CONTINENTAL NATIONAL AMERICAN GROUP company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| SR-2 | CCP 9034300 | ENVIROTECH CORPORATION | 5-29-72 |

1-15-73 SE JOHNSON & HIGGINS

Countersigned by ____________________
Licensed Resident Agent

Schedule For Automatic Premium Adjustment Rating Plan Endt.
G-35797-C



## SCHEDULE FOR
## AUTOMATIC PREMIUM ADJUSTMENT RATING PLAN ENDORSEMENT

(Forming Part of "Automatic Premium Adjustment Rating Plan Endorsement")

**TABLE I**
**Premium Subject to the Plan, Limitations, Loss Conversion Factor, Tax Multiplier Excess Loss Premium Factors**

1. The premium for the following policies is to be computed in accordance with the provisions of the Plan, subject to the limitations specified herein:

List of Policies CCP 9034300

2. The Plan does not apply to the premium for

(a) Protection Against Uninsured Motorists insurance,

(b) Automobile Bodily Injury Liability insurance with respect to automobiles registered in Massachusetts,

(c) * AUTOMOBILE LIABILITY, GENERAL LIABILITY AND AUTOMOBILE PHYSICAL DAMAGE INSURANCE FOR THE STATES OF ALABAMA, ARIZONA, CALIFORNIA, COLORADO, KANS/ MARYLAND, MISSOURI, NEW JERSEY, OKLAHOMA AND WISCONSIN, AND THE GENERAL LIABILITY INSURANCE FOR THE STATE MASSACHUSETTS.

*(Absence of additional wording shall mean no additional exclusions.)

3. The premium for the automobile and other liability insurance afforded under policies designated in paragraph 1 above for insurance in excess of the limits of liability stated below shall not be subject to the Plan:

| | | |
|---|---|---|
| Automobile Liability Insurance Bodily Injury Liability | $ 25,000. | each person |
| | $ 25,000. | each occurrence |
| Property Damage Liability | $ 25,000. | each occurrence |
| Other Liability Insurance Bodily Injury Liability | $ 25,000. | each person |
| | $ 25,000. | each occurrence |
| | $ 100,000. | aggregate |
| Property Damage Liability | $ 25,000. | each occurrence |
| | $ 100,000. | aggregate |
| Personal Injury Liability | $ 100,000. | each person aggregate |
| | $ 100,000. | general aggregate |

This endorsement [illegible]ies such insurance as is afforded by the pr[illegible]is of the policy relating to the following designated insurance:

- [X] All Coverage Parts
- [ ]
- [ ]
- [ ]

## ADDITIONAL INSURED ENDORSEMENT

In consideration of the premium charged, Southern California Edison Company is added as an additional insured with respect to all liabilities arising out of work performed by or on behalf of the named insured.

It is agreed that coverage is included as respects liability assumed by the named insured under contracts or agreements with Southern California Edison Company subject to the terms agreements, exclusions and conditions stated in the policy.

The inclusion of more than one named insured under this policy shall not operate to impair the rights of one insured against another insured and the coverages afforded by this policy shall apply as though separate policies had been issued to each insured. The inclusion of more than one insured shall not, however, operate to increase the limit of the company's liability.

It is understood and agreed that any other insurance carried by Southern California Edison Company, which may be applicable, shall be deemed excess and the named insured's insurance primary notwithstanding any conflicting provisions in the named insured's policy to the contrary.

Southern California Edison Company shall not, by reason of its inclusion under this policy, incur liability for payment of premium for this policy.

In the event of reduction in coverage or cancellation of this insurance, the Company agrees to mail 30 days advance notice of such reduction or cancellation to Southern California Edison Company, Post Office Box 800, Rosemead, California 91770, Attention: Insurance Department.

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| A | CCP 9034300 | Envirotech Corporation | 2/12/74 |

CNA/insurance

Blank Endorsement
DG-31821-A

Countersigned by [signature]
Authorized Agent

BRANCH OFFICE COPY

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

- [X] SPECIAL COMPREHENSIVE LIABILITY INSURANCE
- [ ]
- [ ]
- [ ]

IT IS AGREED THAT END. NO. SR-3 PAGE 5 IS CANCELLED AND REPLACED BY THE FOLLOWING:

(2) WITH RESPECT TO THE REST OF THE "AUTHORIZED INSURANCE" THE TERMS "STANDARD PREMIUM" AND INCURRED LOSSES" HAVE THE SAME MEANING AS DEFINED IN THE AUTOMATIC PREMIUM ADJUSTMENT RATING PLAN ENDORSEMENTS ATTACHED TO THIS POLICY.

THE TERM "AUTHORIZED PREMIUM" MEANS THE PREMIUM FOR AUTHORIZED INSURANCE, COMPUTED IN ACCORDANCE WITH WHATEVER RATING PROCEDURES MAY BE APPLICABLE OTHER THAN THIS ENDORSEMENT.

TABLE III

WC 870 1200

CCP 903 4300

THE ABOVE POLICIES SHALL INCLUDE ANY RENEWALS OR REPLACEMENTS THEREOF AFFORDING INSURANCE WITH RESPECT TO THE THREE YEAR PERIOD COMMENCING WITH THE EFFECTIVE DATE OF THIS ENDORSEMENT.

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| SR-3 PAGE 5A | CCP 9034300 | ENVIROTECH CORPORATION | 5-29-72 |

CNA/insurance

2-25-74 LM/SE JOHNSON & HIGGINS

Blank Endorsement
DG-31821-A

Countersigned by ______________________
Authorized Agent

BRANCH OFFICE COPY

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

☒ SPECIAL COMPREHENSIVE LIABILITY INSURANCE
☐
☐
☐

IT IS AGREED THAT ITEM 2(c) OF TABLE I ON ENDT. NO. SR-2 AND ITEM 2 UNDER THE DEFINITION OF "AUTHORIZED INSURANCE" ON ENDT. NO. SR-3 PAGE 2 ARE AMENDED TO INCLUDE THE FOLLOWING STATES AND LINES OF INSURANCE:

AUTOMOBILE LIABILITY, GENERAL LIABILITY AND AUTOMOBILE PHYSICAL DAMAGE FOR THE STATES OF INDIANA, NEW YORK, NORTH CAROLINA, OREGON, TEXAS AND VIRGINIA

IT IS FURTHER AGREED THAT THE MAXIMUM PREMIUM PERCENTAGE SHOWN IN TABLE II OF ENDT. NO. SR-2 IS AMENDED TO READ 135%.

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| SR-2A | CCP 9034300 | ENVIROTECH CORPORATION | 5-29-72 |

CNA/insurance

2-25-74 LM/SE JOHNSON & HIGGINS

Blank Endorsement
DG-31821-A

Countersigned by ____________________
Authorized Agent

BRANCH OFFICE COPY

This endorse... [illegible]difies such insurance as is afforded by th... [illegible]sions of the policy relating to the following designated insurance:

- ☐ COMPREHENSIVE GENERAL LIABILITY INSURANCE
- ☐ COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE
- ☒ SPECIAL COMPREHENSIVE LIABILITY INSURANCE
- ☐

SUPPLEMENT TO THE AUTOMATIC PREMIUM ADJUSTMENT RATING PLAN ENDORSEMENT

IT IS AGREED THAT THE AUTOMATIC PREMIUM ADJUSTMENT RATING PLAN SHALL APPLY ON THE FOLLOWING BASIS TO DETERMINE THE RISK'S FINAL ADJUSTED SUPPLEMENTAL PREMIUM:

TO THE STANDARD PREMIUM FOR SUPPLEMENTAL INSURANCE AN AMOUNT EQUAL TO THE STANDARD PREMIUM FOR AUTHORIZED INSURANCE SHALL BE ADDED, AND TO THE INCURRED LOSSES FOR SUPPLEMENTAL INSURANCE SHALL BE ADDED AN AMOUNT EQUAL TO THE INCURRED LOSSES FOR SUCH AUTHORIZED INSURANCE. AFTER THE APPLICATION OF THE PLAN TO SUCH STANDARD PREMIUM AND INCURRED LOSSES, AN AMOUNT EQUAL TO THE AUTHORIZED PREMIUM SHALL BE DEDUCTED FROM THE TOTAL ADJUSTED PREMIUM, AND THE BALANCE SHALL BE THE FINAL ADJUSTED SUPPLEMENTAL PREMIUM.

THE TOTAL ADJUSTED PREMIUM SHALL BE SUBJECT TO A MINIMUM PREMIUM OF EITHER

(1) THE AMOUNT OBTAINED BY THE APPLICATION OF THE MINIMUM PREMIUM PERCENTAGE STATED IN TABLE II TO THE TOTAL STANDARD PREMIUM, OR

(2) AN AMOUNT EQUAL TO THE AUTHORIZED PREMIUM,

WHICHEVER IS GREATER.

copies 1-15-73 [illegible]

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| SR-3 ~~PAGE 1~~ | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| ENVIROTECH CORPORATION | 5-29-72 |

CNA/insurance

1-15-73 SE JOHNSON & HIGGINS

Countersigned by________________ Authorized Agent

Blank Endorsement
DG-31821-A

BRANCH OFFICE COPY

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

- ☐ COMPREHENSIVE GENERAL LIABILITY INSURANCE
- ☐ COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE
- ☒ SPECIAL COMPREHENSIVE LIABILITY INSURANCE
- ☐

THE TERM "SUPPLEMENTAL INSURANCE" MEANS THE INSURANCE AFFORDED UNDER THE POLICIES DESIGNATED IN TABLE I, SUBJECT TO THE LIMITATIONS SPECIFIED THEREIN.

THE TERM "AUTHORIZED INSURANCE" MEANS

(1) THE WORKMEN'S COMPENSATION AND EMPLOYERS' LIABILITY INSURANCE, AND

(2) THE AUTOMOBILE LIABILITY, GENERAL LIABILITY AND AUTOMOBILE PHYSICAL DAMAGE INSURANCE FOR THE STATES OF ALABAMA, ARIZONA, CALIFORNIA, COLORADO, KANSAS, MARYLAND, MISSOURI, NEW JERSEY, OKLAHOMA AND WISCONSIN, AND THE GENERAL LIABILITY INSURANCE FOR THE STATE OF MASSACHUSETTS FOR THE FOLLOWING LIMITS OF LIABILITY:

| | |
|---|---|
| AUTOMOBILE LIABILITY INSURANCE | |
| BODILY INJURY LIABILITY | $25,000. EACH PERSON |
| | $25,000. EACH OCCURRENCE |
| PROPERTY DAMAGE LIABILITY | $25,000. EACH OCCURRENCE |
| OTHER LIABILITY INSURANCE | |
| BODILY INJURY LIABILITY | $25,000. EACH PERSON |
| | $25,000. EACH OCCURRENCE |
| | $100,000. AGGREGATE |
| PROPERTY DAMAGE LIABILITY | $25,000. EACH OCCURRENCE |
| | $100,000. AGGREGATE |
| PERSONAL INJURY LIABILITY | $100,000. EACH PERSON AGGREGATE |
| | $100,000. GENERAL AGGREGATE |

Orig to Bain 1-18-73

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| Must Be Completed | | Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| SR-3 PAGE 2 | CCP 9034300 | ENVIROTECH CORPORATION | 5-29-72 |

CNA/insurance

1-15-73 SE JOHNSON & HIGGINS

Countersigned by________________ Authorized Agent

Blank Endorsement DG-31821-A

BRANCH OFFICE COPY

This endorse[illegible] [illegible]difies such insurance as is afforded by th[illegible] [illegible]sions of the policy relating to the fo[illegible]ing designated insurance:

- ☐ COMPREHENSIVE GENERAL LIABILITY INSURANCE
- ☐ COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE
- ☒ SPECIAL COMPREHENSIVE LIABILITY INSURANCE
- ☐

AUTOMOBILE PHYSICAL DAMAGE $25,000. EACH OCCURRENCE

AFFORDED UNDER THE POLICIES DESIGNATED IN TABLE III.

AS RESPECTS AUTHORIZED INSURANCE

(1) WITH RESPECT TO WORKMEN'S COMPENSATION AND EMPLOYERS' LIABILITY INSURANCE

(A) THE TERM "STANDARD PREMIUM" MEANS THE PREMIUM FOR SUCH INSURANCE COMPUTED IN ACCORDANCE WITH THE PROVISIONS OF THE POLICIES, EXCLUSIVE OF THE APPLICATION OF ANY RETROSPECTIVE PREMIUM ENDORSEMENTS, PREMIUM DISCOUNT ENDORSEMENTS OR THIS ENDORSEMENT,

(B) THE TERM "INCURRED LOSSES" MEANS ALL LOSSES, INCLUDING MEDICAL, ACTUALLY PAID; RESERVES FOR UNPAID LOSSES AS ESTIMATED BY THE COMPANY; INTEREST ACCRUING AFTER ENTRY OF JUDGMENT AGAINST THE INSURED AND EXPENSES INCURRED IN OBTAINING RECOVERY AGAINST A THIRD PARTY; AND, AS RESPECTS EMPLOYERS' LIABILITY COVERAGE, ALLOCATED LOSS ADJUSTMENT EXPENSES. FOR THE PURPOSES OF THIS DEFINITION, INCURRED LOSSES ARISING OUT OF BODILY INJURY BY DISEASE, INCLUDING DEATH AT ANY TIME RESULTING THEREFROM, SUSTAINED BY ANY ONE EMPLOYEE SHALL BE DEEMED TO ARISE OUT OF A SINGLE ACCIDENT. THE LIMIT OF SUCH PAID LOSSES, RESERVES AND EXPENSES TO BE INCLUDED HEREIN ARISING OUT OF BODILY INJURY

Copies to 1-18-73 JB

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| SR-3 PAGE 3 | CCP 9034300 | ENVIROTECH CORPORATION | 5-29-72 |

CNA/insurance

1-15-73 SE JOHNSON & HIGGINS

Countersigned by________________
Authorized Agent

Blank Endorsement
DG-31821-A

BRANCH OFFICE COPY

This endorse... ...difies such insurance as is afforded by th... ...ions of the policy relating to the fo...ing designated insurance:

- ☐ COMPREHENSIVE GENERAL LIABILITY INSURANCE
- ☐ COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE
- ☒ SPECIAL COMPREHENSIVE LIABILITY INSURANCE
- ☐

BY ACCIDENT OR DISEASE, INCLUDING DEATH AT ANY TIME RESULTING THEREFROM, SUSTAINED BY ONE OR MORE EMPLOYEES OF THE INSURED IN A SINGLE ACCIDENT SHALL BE $25,000.

copies to region 1-18-73

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| SR-3 PAGE 4 | CCP 9034300 | ENVIROTECH CORPORATION | 5-29-72 |

CNA/insurance

1-15-73 SE JOHNSON & HIGGINS

Countersigned by ____________________
Authorized Agent

Blank Endorsement
DG-31821-A

BRANCH OFFICE COPY

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

- [x] SPECIAL COMPREHENSIVE LIABILITY INSURANCE
- [ ]
- [ ]
- [ ]

(2) WITH RESPECT TO ALL OTHER AUTHORIZED INSURANCE THE TERMS "STANDARD PREMIUM" AND "INCURRED LOSSES" MEAN THE STANDARD PREMIUM AND INCURRED LOSSES AS DEFINED, AND AS LIMITED, IN THE RETROSPECTIVE PREMIUM ENDORSEMENTS ATTACHED TO THE POLICIES DESIGNATED IN TABLE III.

THE TERM "AUTHORIZED PREMIUM" MEANS THE PREMIUM FOR AUTHORIZED INSURANCE, COMPUTED IN ACCORDANCE WITH WHATEVER RATING PROCEDURES MAY BE APPLICABLE OTHER THAN THIS ENDORSEMENT.

TABLE III

WC 8701200

CCP 9034300

THE ABOVE POLICIES SHALL INCLUDE ANY RENEWALS OR REPLACEMENTS THEREOF AFFORDING INSURANCE WITH RESPECT TO THE THREE YEAR PERIOD COMMENCING WITH THE EFFECTIVE DATE OF THIS ENDORSEMENT.

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. SR-3 | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| PAGE 5 | CCP 9034300 | ENVIROTECH CORPORATION | 5-29-72 |

CNA/insurance

4-17-73 SE JOHNSON & HIGGINS

Blank Endorsement
DG-31821-A

Countersigned by ____________________
Authorized Agent

BRANCH OFFICE COPY

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

- [x] ALL COVERAGE PARTS
- [ ]
- [ ]
- [ ]

IT IS HEREBY AGREED THAT MAXIMUM PREMIUM UNDER TABLE II OF ENDORSEMENT NUMBER SR-2, FORM G-35797-C, EFFECTIVE 5-29-72, IS AMENDED TO READ AS FOLLOWS:

135%

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| SR-4 | CCP 9034300 | ENVIROTECH CORPORATION | 5-29-72 |

10-23-73 SLS/EA JOHNSON & HIGGINS

Blank Endorsement
DG-31821-A

Countersigned by ______________________
Authorized Agent

BRANCH OFFICE COPY

 CERTIFICATE OF AUTOMOBILE INSURANCE

The Policy identified herein, has been issued by the Company designated below and is in force on the date of Certificate Issuance. The insurance is afforded only with respect to those coverages and automobiles for which a specific limit of liability has been entered and is subject to all the terms of the Policy having reference thereto. This Certificate of Insurance neither affirmatively nor negatively amends, extends or alters the coverage afforded under any policy identified herein.

NAME & ADDRESS OF INSURED

ENVIROTECH CORPORATION
3000 SANDHILL ROAD
MENLO PARK, CALIFORNIA

Policy No. CCP 9034300
Policy Expiration: 5-29-75
Date of Certificate Issuance 4-13-73

Authorized Representative

NAME & ADDRESS OF CERTIFICATE HOLDER

BUELL DIVISION OF ENVIROTECH CORP.

ATTENTION: JOHN E. SHIPPER

| COVERAGES | | LIMITS OF LIABILITY | | | | |
|---|---|---|---|---|---|---|
| Bodily Injury Liability | All Automobiles | $ 300 ,000 each person<br>$ 300 ,000 each occurrence | | | | |
| Property Damage Liability | All Automobiles | $ 300 ,000 each occurrence | | | | |
| Uninsured Motorists | Unit No. | $ 15 ,000 each person<br>$ 30 ,000 each accident | | Unit Numbers: | | |
| Automobile Medical Payments | Unit No. | $ 5 ,000 each person | | Unit Numbers: | | |
| Automobile Physical Damage | | | | | | |
| Collision or Upset | Unit No. | ACTUAL CASH VALUE LESS:<br>1. $ 250. Deductible | 2. $ 250. Deductible | 3. $ Deductible | 4. $ Deductible | 5. $ Deductible |
| Comprehensive | Unit No. | (INSERT AMOUNT OR "ACV" [ACTUAL CASH VALUE])<br>1. $ ACV | 2. $ ACV | 3. $ | 4. $ | 5. $ |
| | Unit No. | LESS $250. DEDUCTIBLE<br>1. $ | 2. $ | 3. $ | 4. $ | 5. $ |
| | Unit No. | 1. $ | 2. $ | 3. $ | 4. $ | 5. $ |
| | Unit No. | 1. $ | 2. $ | 3. $ | 4. $ | 5. $ |

AUTOMOBILES INSURED BY POLICY

| Unit No. | Year of Model | Trade Name | Model | Body Type; Truck Size; Truck Load Capacity; Tank Gallonage Capacity; or Bus Seating Capacity | Identification No. Serial No., or Motor No. |
|---|---|---|---|---|---|
| 1. | 1973 | DODGE DART - SWINGER | #LH23C3B42295 | | |
| 2. | 1973 | DODGE DART - SEDAN | #LH41G3R227653 | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |

Loss Payee: Any Automobile Physical Damage loss for units ______ is payable as interest may appear in accordance with the Loss Payable Clause on the reverse side to the Insured and to ______

In the event of cancellation of said Policy, the Company will make all reasonable effort to send notice of such cancellation to the certificate holder at the address shown herein, but the Company assumes no responsibility for any mistake or for failure to give such notice. This certificate is issued as a matter of information only and confers no rights.

The preceding paragraph does not apply to the loss payee named above with respect to such insurance as is afforded by said policy for Automobile Physical Damage.

☒ Continental Casualty Company
☐ Transportation Insurance Company
☐ American Casualty Company of Reading, Pa.
☐ Valley Forge Insurance Company
☐ National Fire Insurance Company of Hartford
☐ Transcontinental Insurance Company

Certificate of Automobile Insurance
Form No. G-31121-J

This endorsement [illegible]ifies such insurance as is afforded by the p[illegible] ons of the policy relating to the following designated insurance:

- [X] ALL COVERAGE PARTS
- [ ]
- [ ]
- [ ]

## PREMIUM BREAKDOWN ENDORSEMENT

| CODE | COVERAGE | PREMIUM SUBJECT | | PREMIUM NON-SUBJECT | TOTAL PREMIUM |
|---|---|---|---|---|---|
| 42-35992 | GENERAL LIAB. | B.I. | $21,365. | $29,503. | $ 50,868. |
| | | P.D. | 13,212. | 29,407. | 42,619. |
| | AUTO. LIAB. | B.I. | 10,971. | 8,276. | 19,247. |
| | | P.D. | 8,249. | 8,249. | 16,498. |
| | AUTO COMP. | | 2,749. | - | 2,749. |
| | AUTO COLLISION | | 5,495. | - | 5,499. |
| | | | $62,045. | $75,435. | $137,480. |

SUPERCEDES ORO ENDORSEMENT ISSUED 10-24-74 EFFECTIVE 5-29-74

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| ORO | CCP 9034300 | ENVIROTECH CORPORATION | 5-29-74 |

CNA/*insurance* 12-27-74 EW/SE JOHNSON & HIGGINS S.F.

Blank Endorsement
DG-31821-A

Countersigned by ______________________
Authorized Agent

BRANCH OFFICE COPY

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

☐ COMPREHENSIVE GENERAL LIABILITY INSURANCE
☐ COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE
☒ SPECIAL COMPREHENSIVE LIABILITY INSURANCE
☐

NAMED INSURED ENDORSEMENT

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS AGREED THAT ITEM #1 OF THE DECLARATIONS SHALL INCLUDE THE FOLLOWING:

EIMCO CORPORATION

WEMCO CORPORATION

GOSLIN-BIRMINGHAM, INC.

BUELL ENGINEERING COMPANY, INC.

SPARLING METER COMPANY

DOHRMANN INSTRUMENTS COMPANY

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| G-1 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| | |

CNA/insurance

Countersigned by J. T. Wecherle
Authorized Agent

Blank Endorsement
G-31821-A

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

- ☐ COMPREHENSIVE GENERAL LIABILITY INSURANCE
- ☐ COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE
- ☒ SPECIAL COMPREHENSIVE LIABILITY INSURANCE
- ☐

NAMED INSURED ENDORSEMENT

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS UNDERSTOOD AND AGREED THAT ITEM #1 OF THE DECLARATIONS, NAMED INSURED, IS AMENDED TO INCLUDE THE FOLLOWING:

EIMCO CORPORATION
WEMCO CORPORATION
GOSLIN-BIRMINGHAM, INC.
BUELL ENGINEERING CO., INC.
DOHRMANN INSTRUMENTS COMPANY
ENVIROTECH SYSTEMS, INC.
MUNICIPAL EQUIPMENT DIVISION
SPARLING METER COMPANY

AND/OR ALL SUBSIDIARY COMPANIES AS ARE NOW OR HEREAFTER CONSTITUTED.

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| REVISED G-1 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| ENVIROTECH CORPORATION | 5-29-72 |

CNA/insurance

9-5-72 CS

Blank Endorsement
G-31821-A

JOHNSON & HIGGINS

Countersigned by ____________________
Authorized Agent

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

- ☐ COMPREHENSIVE GENERAL LIABILITY INSURANCE
- ☐ COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE
- ☒ COMMERCIAL CASUALTY POLICY
- ☐

COMPOSITE RATE ENDORSEMENT

IT IS UNDERSTOOD AND AGREED THAT THE FINAL EARNED PREMIUM FOR THIS POLICY SHALL BE DETERMINED BY THE APPLICATION OF THE RATES SET FORTH BELOW PER $100. OF M & C PAYROLL.

| COVERAGE | | SUBJ. | N.S. | TOTAL |
|---|---|---|---|---|
| GEN'L LIAB. | BI | .080 | .110 | .190 |
| | PD | .050 | .110 | .160 |
| AUTO LIAB. | BI | .040 | .030 | .070 |
| | PD | .030 | .030 | .060 |
| AUTO COMP. | | .010 | - | .010 |
| AUTO COLLISION | | .020 | - | .020 |
| TOTAL | | .230 | .280 | .510 |

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| CR-1 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| | |

CNA/insurance

Countersigned by J. T. Wecherle
Authorized Agent

Blank Endorsement
G-31821-A

This endorsem[illegible] modifies such insurance as is afforded by the [illegible]isions of the policy relating to the following designated insurance:

- ☐ COMPREHENSIVE GENERAL LIABILITY INSURANCE
- ☐ COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE
- ☒ COMMERCIAL CASUALTY POLICY
- ☐

## COMPOSITE RATE ENDORSEMENT

IT IS UNDERSTOOD AND AGREED THAT THE FINAL EARNED PREMIUM FOR THIS POLICY SHALL BE DETERMINED BY THE APPLICATION OF THE RATES SET FORTH BELOW PER $100. OF M & C PAYROLL.

| RO | COVERAGE | | SUBJ. | M.S. | TOTAL |
|---|---|---|---|---|---|
| ~~999~~ 9160 | GEN'L LIAB. | BI | .080 ✓ | ~~.110~~ .075 | .198 |
| " | | PD | ~~.050~~ .125 ✓ | ~~.110~~ .075 | .160 |
| ~~888~~ 9160 | AUTO LIAB. | BI | .040 ✓ | .030 ✓ | .070 |
| " | | PD | .030 ✓ | ~~.030~~ .025 | .060 |
| 999 | AUTO COMP. | | .010 ✓ | - | .010 |
| " | AUTO COLLISION | | .020 ✓ | - | .020 |
| | TOTAL | | .230 | .280 | .510 |

Codes corrected as found herein per request of Region.

vd
7-24-72

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| CR-1 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| | |

CNA/insurance

Blank Endorsement
DG-31821-A

Countersigned by__________________
Authorized Agent

BRANCH OFFICE COPY

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

- ☐ COMPREHENSIVE GENERAL LIABILITY INSURANCE
- ☐ COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE
- ☒ COMMERCIAL CASUALTY POLICY
- ☐

INSTALLMENT ENDORSEMENT

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS UNDERSTOOD AND AGREED THAT THE ADVANCE PREMIUM FOR THIS POLICY IS PAYABLE AS FOLLOWS:

| | | | |
|---|---|---|---|
| DATE DUE | 5-29-72 | AMOUNT DUE | $7,500. |
| | 6-29-72 | | 7,500. |
| | 7-29-72 | | 7,500. |
| | 8-29-72 | | 7,500. |
| | 9-29-72 | | 7,500. |
| | 10-29-72 | | 7,500. |
| | 11-29-72 | | 7,500. |
| | 12-29-72 | | 7,500. |
| | 1-29-73 | | 7,500. |
| | 2-29-73 | | 7,500. |
| | 3-29-73 | | 7,500. |
| | 4-29-73 | | 7,500. |
| | TOTAL | | $90,000. |

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| I-1 | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| | |

CNA/insurance

Countersigned by [signature] Authorized Agent

Blank Endorsement
G-31821-A

This endorsem[illegible] modifies such insurance as is afforded by the [illegible]sions of the policy relating to the following designated insurance:

- ☐ COMPREHENSIVE GENERAL LIABILITY INSURANCE
- ☐ COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE
- ☒ COMMERCIAL CASUALTY POLICY
- ☐

INSTALLMENT BREAKDOWN

| | SUBJ | N-S | TOTAL |
|---|---|---|---|
| OBI | 1176. | 1619. | 2794. |
| OPD | 735. | 1618. | 2353. |
| ABI | 588. | 441. | 1029. |
| APD | 441. | 441. | 882. |
| ACOMP | 147. | - | 147. |
| ACOLL | 294. | - | 294. |
| | 3381. | 4119. | 7500. |

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| ORO | CCP 9034300 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| | |

Countersigned by____________________

Authorized Agent

Blank Endorsement
DG-31821-A

BRANCH OFFICE COPY



This endorsemen[t mo]difies such insurance as is afforded by the pr[ovis]ions of the policy relating to the following designated insurance:

☒ ALL COVERAGE PARTS
☐
☐
☐

PREMIUM BREAKDOWN ENDORSEMENT

| CODE | COVERAGE | | PREMIUM SUBJECT | PREMIUM NON-SUBJECT | TOTAL PREMIUM |
|---|---|---|---|---|---|
| 42-35992 | GENERAL LIAB. | B.I. | $23,199. | $31,898. | $55,097. |
| | | P.D. | 14,582. | 31,898. | 46,480. |
| | AUTO LIAB. | B.I. | $11,997. | 8,781. | 20,298. |
| | | P.D. | 8,701. | 8,701. | 17,402. |
| | AUTO COMP. | | 3,155. | - | 3,155. |
| | AUTO COLLISION | | 5,341. | - | 5,932. |
| | | | | TOTAL | $148,284. |

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| ORO | CCP 9834300 | ENVIROTECH CORPORATION | 5-29-74 |

10-24-74 EW/SE JOHNSON & HIGGINS S.F.

CNA/insurance

Blank Endorsement
DG-31821-A

Countersigned by ______________________
Authorized Agent

TO: LPS EXPERIENCE & RATING DEPARTMENT
HOME OFFICE

# IDENTIFICATION CARD CHANGE NOTICE

*(Complete only the items in Columns B and C which are being changed)*

[X] CN
[ ] ACCO
[ ] PROPERTY PACKAGE (CNA)

INSURED'S NAME ENVIROTECH CORPORATION

POLICY NUMBER CCP 9034300 (AS RECORDED) POLICY TERM 5-29-72 TO 5-29-75

EFFECTIVE DATE OF CHANGE 5-29-72

TRANSMITTAL DATE OR DATE RECORDED 18 JUL 20 1972 (ON BRANCH COPY OF POLICY OR ON ABSTRACT)

| A | B Change From | C Change To |
|---|---|---|
| Policy Number | | |
| Non-Participating | | |
| Participating | | |
| New Or Renewal | | |
| Group Code | | |
| Estimated Annual Premium | | |
| Special Frequency | | |
| PR-PT CODE | 52-40 | 52-99 |

| COVERAGE | E. P. Code | Mod. | Comm. | E. P. Code | Mod. | Comm. |
|---|---|---|---|---|---|---|
| 31. Workmen's Compensation | | | | | | |
| 38. Boiler & Machinery | | | | | | |
| 34. Auto Liability | | | | | | |
| 64 or 65. Other Allied/Earthquake | | | | | | |
| 36. Physical Damage | | | | | | |
| 53 or 66. Cml. MP or Growing Crops | | | | | | |
| 32. Miscellaneous Liability | | | | | | |
| 62 or 63. Fire or Extended Coverage | | | | | | |
| 69. Inland Marine (Incl. Cargo) | | | | | | |
| 68. Ocean Marine | | | | | | |
| 85. Plate Glass | | | | | | |
| 86. Burglary | | | | | | |
| 83. Fidelity | | | | | | |

Distribution:
Branch Office
Regional Office
H.O. Experience Dept.

NAME EDNA M. ARELLANO

DATE 9-26-73

[X] BRANCH SAN FRANCISCO

[ ] PROCESSING CENTER

G-35220-E

COMMERCIAL CASUALTY POLICY







## CONTENTS

Policy Jacket consisting of

**Definitions** of terms in general use throughout the policy
**Supplementary Payments** provided in connection with Liability Coverage
**Conditions** applicable to the Coverage Parts
**Nuclear Energy Liability Exclusion**

Inserts consisting of

**Declarations** Page
**Coverage Parts** describing insurance coverages and limitations thereon
**Endorsements** affording coverage or modifying the coverage afforded

**Endorsements issued to form a part of the policy during its term should be placed in this policy jacket.**

Please read your policy carefully and consult your agent or broker if you have questions.

   

The company designated in the declarations (a stock insurance company, herein called the company) in consideration of the payment of the premium, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, agrees with the named insured as follows:

## DEFINITIONS

When used in this policy (including endorsements forming a part hereof):

"**automobile**" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include **mobile equipment**;

"**bodily injury**" means bodily injury, sickness or disease sustained by any person;

"**collapse hazard**" includes "structural property damage" as defined herein and **property damage** to any other property at any time resulting therefrom. "Structural property damage" means the collapse of or structural injury to any building or structure due to (1) grading of land, excavating, borrowing, filling, back-filling, tunnelling, pile driving, cofferdam work or caisson work or (2) moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support thereof. The **collapse hazard** does not include **property damage** (1) arising out of operations performed for the named insured by independent contractors, or (2) included within the **completed operations hazard** or the **underground property damage hazard**, or (3) for which liability is assumed by the **insured** under an **incidental contract**;

"**completed operations hazard**" includes **bodily injury** and **property damage** arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the **bodily injury** or **property damage** occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the **named insured**. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the **named insured** under the contract have been completed,

(2) when all operations to be performed by or on behalf of the **named insured** at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The **completed operations hazard** does not include **bodily injury** or **property damage** arising out of

(a) operations in connection with the transportation of property, unless the **bodily injury** or **property damage** arises out of a condition in or on a vehicle created by the loading or unloading thereof,

(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

(c) operations for which the classification stated in the policy or in the company's manual specifies "including completed operations";

"**damages**" includes damages for death and for care and loss of services resulting from **bodily injury** and damages for loss of use of property resulting from **property damage**;

"**elevator**" means any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery; but does not include an **automobile** servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property or a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet;

"**explosion hazard**" includes **property damage** arising out of blasting or explosion. The **explosion hazard** does not include **property damage** (1) arising out of the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment, or (2) arising out of operations performed for the **named insured** by independent contractors, or (3) included within the **completed operations hazard** or the **underground property damage hazard**, or (4) for which liability is assumed by the **insured** under an **incidental contract**;

"**incidental contract**" means any written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) **elevator** maintenance agreement;

"**insured**" means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each **insured** against whom claim is made or suit is brought, except with respect to the limits of the company's liability;

"**mobile equipment**" means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the **named insured**, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment;

"**named insured**" means the person or organization named in Item 1. of the declarations of this policy;

"**named insured's products**" means goods or products manufactured, sold, handled or distributed by the **named insured** or by others trading under his name, including any container thereof (other than a vehicle), but "**named insured's products**" shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;

"**occurrence**" means an accident, including injurious exposure to conditions, which results, during the policy period, in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured**;

"**policy territory**" means:

(1) the United States of America, its territories or possessions, or Canada, or

(2) international waters or air space, provided the **bodily injury** or **property damage** does not occur in the course of travel or transportation to or from any other country, state or nation, or

(3) anywhere in the world with respect to **damages** because of **bodily injury** or **property damage** arising out of a product which was sold for use or consumption within the territory described in paragraph (1) above, provided the original suit for such damages is brought within such territory;

"**products hazard**" includes **bodily injury** and **property damage** arising out of the **named insured's products** or reliance upon a representation or warranty made at any time with respect thereto, but only if the **bodily injury** or **property damage** occurs away from premises owned by or rented to the **named insured** and after physical possession of such products has been relinquished to others;

"**property damage**" means injury to or destruction of tangible property;

"**underground property damage hazard**" includes underground property damage as defined herein and **property damage** to any other property at any time resulting therefrom. "Underground property damage" means **property damage** to wires conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, borrowing, filling, back-filling or pile driving. The **underground property damage hazard** does not include **property damage** (1) arising out of operations performed for the **named insured** by independent contractors, or (2) included within the **completed operations hazard**, or (3) for which liability is assumed by the **insured** under an **incidental contract**.

## SUPPLEMENTARY PAYMENTS

The company will pay, in addition to the applicable limit of liability:

(a) all expenses incurred by the company, all costs taxed against the **insured** in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;

(b) premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required of the **insured** because of accident or traffic law violation arising out of the us of any vehicle to which this policy applies, not to exceed $250 per bail bonc but the company shall have no obligation to apply for or furnish any suc bonds;

(c) expenses incurred by the **insured** for first aid to others at the time of an acc dent, for **bodily injury** to which this policy applies;

(d) reasonable expenses incurred by the **insured** at the company's request, inclu ing actual loss of wages or salary (but not loss of other income) not to excee $25 per day because of his attendance at hearings or trials at such reques



## CONDITIONS

1. **Premium:** All premiums for this policy shall be computed in accordance with the company's rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

Premium designated in this policy as "advance premium" is a deposit premium only which shall be credited to the amount of the earned premium due at the end of the policy period. At the close of each period (or part thereof terminating with the end of the policy period) designated in the declarations as the audit period the earned premium shall be computed for such period and, upon notice thereof to the named insured, shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the company shall return to the named insured the unearned portion paid by the named insured.

The named insured shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the company at the end of the policy period and at such times during the policy period as the company may direct.

2. **Inspection and Audit:** The company shall be permitted but not obligated to inspect the named insured's property and operations at any time. Neither the company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the named insured or others, to determine or warrant that such property or operations are safe.

The company may examine and audit the named insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

3. **Financial Responsibility Laws:** When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

4. **Insured's Duties in the Event of Occurrence, Claim or Suit:**

(a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable. The named insured shall promptly take at his expense all reasonable steps to prevent other bodily injury or property damage from arising out of the same or similar conditions, but such expense shall not be recoverable under this policy.

(b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

(c) The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of bodily injury or property damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

5. **Action Against Company:** No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the company as a party to any action against the insured to determine the insured's liability, nor shall the company be impleaded by the insured or his legal representative. Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder.

6. **Other Insurance:** The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) **Contribution by Equal Shares.** If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) **Contribution by Limits.** If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

7. **Subrogation:** In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

8. **Changes:** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

9. **Assignment:** Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the named insured shall die, such insurance as is afforded by this policy shall apply (1) to the named insured's legal representative, as the named insured, but only while acting within the scope of his duties as such, and (2) with respect to the property of the named insured, to the person having proper temporary custody thereof, as insured, but only until the appointment and qualification of the legal representative.

10. **Three Year Policy:** If this policy is issued for a period of three years, the limits of the company's liability shall apply separately to each consecutive annual period thereof.

11. **Cancellation:** This policy may be cancelled by the named insured by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the named insured at the address shown in this policy, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

If the named insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

12. **Declarations:** By acceptance of this policy, the named insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.

IN WITNESS WHEREOF, the company designated on the declarations page has caused this policy to be signed by its president and secretary, at Chicago, Illinois but the same shall not be binding upon the company unless countersigned on the declarations page by a duly authorized agent of the company.

| Continental Casualty Company<br>Transportation Insurance Company | American Casualty Company of Reading, Pa.<br>Valley Forge Insurance Company | National Fire Insurance Company of Hartford<br>Transcontinental Insurance Company |
|---|---|---|

Secretary President

Secretary President

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
(BROAD FORM)

This endorsement modifies the provisions of this policy relating to ALL AUTOMOBILE LIABILITY, GENERAL LIABILITY AND MEDICAL PAYMENTS INSURANCE OTHER THAN FAMILY AUTOMOBILE, SPECIAL PACKAGE AUTOMOBILE, COMPREHENSIVE PERSONAL AND FARMER'S COMPREHENSIVE PERSONAL INSURANCE.

It is agreed that:

I. This policy does not apply:

A. Under any Liability Coverage, to **bodily injury** or **property damage**

(1) with respect to which an **insured** under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the **hazardous properties** of **nuclear material** and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

C. Under any Liability Coverage, to **bodily injury** or **property damage** resulting from the **hazardous properties** of **nuclear material**, if

(1) the **nuclear material** (a) is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured** or (b) has been discharged or dispersed therefrom;

(2) the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured**; or

(3) the **bodily injury** or **property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to **property damage** to such **nuclear facility** and any property thereat.

II. As used in this endorsement:

"**hazardous properties**" include radioactive, toxic or explosive properties;

"**nuclear material**" means **source material**, **special nuclear material** or **by-product material**;

"**source material**", "**special nuclear material**", and "**byproduct material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"**spent fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

"**waste**" means any waste material (1) containing **byproduct material** and (2) resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph (a) or (b) thereof;

"**nuclear facility**" means

(a) any **nuclear reactor**,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing **spent fuel**, or (3) handling, processing or packaging **waste**,

(c) any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"**nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"**property damage**" includes all forms of radioactive contamination of property.